Shelton HARRISON, Sr.

v.

GLENDEL DRILLING COMPANY and Union Oil Company of California.

Civ. A. No. 86–1412.

United States District Court,
W.D. Louisiana,
Opelousas Division.

Feb. 22, 1988.

---

**28.** Hearing Transcript, December 11, 1985, at p. 14.

Law Offices of Ingram, Baker & Credeur, Allen R. Ingram, Lafayette, La., for plaintiff.

Terriberry, Carroll & Yancey, Robert S. Reich, New Orleans, La., for Glendel Drilling Co. and Union Oil Co.

Roy, Carmouche, Bivins, Judice, Henke & Breaud, Harmon F. Roy, Alan K. Breaud, Lafayette, La., for Dr. Louis C. Blanda.

**1416**

RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on a Motion to Dismiss filed by third-party defendant, Dr. Lewis C. Blanda, Jr. (hereinafter "Dr. Blanda"). Defendants, Glendel Drilling Company ("Glendel"), Union Oil Company of California ("Union"), and GCH Drilling Venture ("GCH"), filed a third-party complaint against Dr. Blanda claiming that the injuries alleged by the plaintiff, Shelton Harrison, were either caused or aggravated by Dr. Blanda's negligent treatment.

Plaintiff alleges that on September 21, 1985 he was injured while working in the course and scope of his employment as an oil-well driller with Glendel. On that day plaintiff was being transported by the standby vessel M/V Guy from Drilling Barge No. 17 across Sweet Lake in Cameron Parish, Louisiana to Sweet Lake Landing when the M/V Guy struck an unlit wellhead in the lake. Drilling Barge No. 17 and the M/V Guy were owned by GCH and were operated by either GCH or Glendel. The wellhead was owned by Union.

On June 26, 1986 plaintiff brought this action under the Jones Act, 46 U.S.C. § 688, and general maritime law against Glendel, Union, and GCH claiming that he sustained injuries as a result of the accident. Plaintiff asserted jurisdiction under 28 U.S.C. § 1332 on the basis of diversity of citizenship of the parties and amount in controversy which exceeds $10,000.00.[1] Plaintiff requested trial by jury. Thereafter, defendants filed the third party complaint at issue here, asserting claims for indemnity, or alternatively, for contribution against Dr. Blanda, plaintiff's treating orthopedic physician,[2] based upon Dr. Blanda's alleged medical malpractice. Defend-

ants also tendered Dr. Blanda to plaintiff pursuant to Fed.R.Civ.P. 14(c).

On July 1, 1987 Dr. Blanda filed this motion seeking dismissal of defendants' claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction over the third party complaint, or alternatively, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In his motion Dr. Blanda raises the argument that defendants have not complied with the statutory requirements of the Louisiana Medical Malpractice Act, 1975 La. Acts 817 (current version at La.R.S.Ann. § 40:1299.41 et seq.) which are applicable to defendants' claims under Louisiana law. Defendants contend that their claims for indemnity or contribution are maritime in nature, and as such, are sufficient to set forth an independent basis for subject matter jurisdiction, so that federal admiralty law, not Louisiana law, should govern these claims. Alternatively, should we find that there is no independent basis for subject matter jurisdiction, i.e. admiralty jurisdiction does not exist, defendants argue that we should exercise ancillary jurisdiction over their claims. Although Louisiana law would then be applicable to their claims, defendants maintain that the requirement for a preliminary review before a medical panel, as provided under R.S. 40:1299.47(B), is procedural in nature, and therefore does not apply to their claims in federal court.

On October 7, 1987 counsel for all parties participated in oral argument before the court regarding the Motion to Dismiss, after which we took the matter under advisement. We were informed on December 1 and 2, 1987 by counsel for the parties that plaintiff and defendants had reached a settlement dismissing plaintiff's claims against defendants. See Order of Dismis-

---

1. Plaintiff has not properly alleged diversity of citizenship jurisdiction. The pleadings are inadequate to establish diversity since there is no statement setting forth the place of incorporation or the principal place of business of the defendants. *Nadler v. American Motors Sales Corp.*, 764 F.2d 409, 412–13 (5th Cir.1985); *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir.1982). The issue is moot, however, as counsel for plaintiff informed us at the

pre-trial conference on October 23, 1987 that complete diversity did not actually exist between plaintiff and defendants, or between defendants-third party plaintiffs and Dr. Blanda.

2. Plaintiff has still been receiving treatment from Dr. Blanda as of the time this motion was argued by counsel on October 7, 1987.

sal, January 22, 1988. Counsel for defendants, however, represented that defendants still want to proceed on their third-party claims against Dr. Blanda.

SUBJECT MATTER JURISDICTION:

We shall consider first whether defendants have properly implead Dr. Blanda under Rule 14(c). Then, we shall address defendants' contentions that:

(1) The complaint states a cause of action in maritime tort;

(2) Defendants' claims for indemnity and contribution are governed by maritime law since plaintiff's claims against defendants are maritime;

(3) Dr. Blanda's treatment of plaintiff established an implied maritime contract which is governed by maritime law;

(4) Defendants' claims are "nonetheless ancillary to plaintiff's claim for maintenance and cure."[3] Defendants' Memorandum in Opposition of Motions Filed by Third–Party Defendant (Document No. 36 in the Record).

1. *Third Party Practice—Federal Rule of Civil Procedure 14(c)*

Defendants bring their third-party complaint against Dr. Blanda pursuant to Fed. R.Civ.P. 14(c).[4] In that complaint defendants assert that their claims fall within our admiralty and maritime jurisdiction. Additionally, defendants demand judgment against third-party defendant, Dr. Blanda, in favor of plaintiff, and thereby tender Dr. Blanda directly to plaintiff. Defendants' Third Party Complaint, ¶ 8 (Document 25 in the Record). Although under Rule 14(c) a third-party plaintiff may tender a third-party defendant to plaintiff, when the plaintiff has asserted an admiralty or maritime claim within the meaning of Fed.R.Civ.P. 9(h),[5] such is not the situation here, and accordingly Rule 14(c) has no application to this case.

Rule 14(c) allows a defendant to implead a third party who he claims is "wholly or partly liable, either to the plaintiff or to [himself] ... on account of the same transaction, occurrence, or series of transactions or occurrences." The Advisory Committee Notes for Rule 14 explain that Part (c) was added to the Rule as part of the 1966 unification of federal admiralty practice and civil practice. Part (c) was intended to preserve a defendant's traditional right in admiralty to demand judgment directly in favor of plaintiff and against the third-party defendant. Where such a demand is made, the Rule provides that "the third-party defendant shall make his defenses to the claims of the plaintiff ... and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." Consequently, the plaintiff is forced to assert his claims directly against the

---

**3.** There is no mention anywhere in the pleadings filed by plaintiff that he is seeking "maintenance and cure" from his employer, Glendel.

**4.** Fed.R.Civ.P. 14(c) provides:

Admiralty and Maritime Claims. When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had com·

menced it against the third-party defendant as well as the third-party plaintiff.

**5.** Fed.R.Civ.P. 9(h) provides:

Admiralty and Maritime Claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. The reference in Title 28, U.S.C. § 1292(a)(3), to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of this subdivision (h).

third-party defendant. This procedure is to be distinguished from that under Rule 14(a), which does not automatically establish a direct relationship between plaintiff and third-party defendant upon the assertion of a third-party demand.[6] *See generally*, 6 Wright & Miller, *Federal Practice and Procedure*, § 1465 at 342 (1971); 3 Moore, *Federal Practice 2d*, ¶ 14.31.

A defendant may invoke Rule 14(c) (1) whenever the plaintiff has asserted a claim which has been specifically identified in the complaint as one in admiralty pursuant to Rule 9(h), or (2) when it is apparent from a reading of the complaint that admiralty jurisdiction is the only basis for federal subject matter jurisdiction over the action. Fed.R.Civ.P. 9(h), 14(c); 6 Wright & Miller, *supra*, at 343. Under Rule 9(h) no specific "identifying statement" is necessary "[i]f the claim is cognizable only in admiralty." However, where the complaint shows that both admiralty and some other basis of federal jurisdiction exist, the plaintiff must employ an "identifying statement" in accordance with Rule 9(h) in order to be entitled to the special benefits afforded to admiralty litigants under the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.[7] *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir.1975); *Duhon v. Koch Exploration Co.*, 628 F.Supp. 925, 928–29 n. 8 (W.D.La.1986); 5 Wright & Miller, *Federal Practice and Procedure*, § 1313 at 454 (1969). *See also, Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 726 n. 6 (5th Cir.1983) (The court noted that where the plaintiff's complaint was based on the Jones Act and the general maritime

law and did not expressly contain a Rule 9(h) declaration, but did contain a jury demand, the defendant was not entitled to the benefits of Rule 14(c)).

A plaintiff's allegation that his claim is within the admiralty and maritime jurisdiction is not sufficient to make it an admiralty and maritime claim within the meaning of Rule 9(h), if the claim is also within the district court's jurisdiction on some other ground. *Smith v. Pinell*, 597 F.2d 994 (5th Cir.1979); *Banks v. Hanover Steamship Corp.*, 43 F.R.D. 374, 376–77 (D.Md.1967); 5 Wright & Miller, *supra*, at 454. In *Smith v. Pinell, supra*, the plaintiff sued the defendant under the Jones Act for negligence and under the general maritime law for unseaworthiness, and demanded a jury trial. Although plaintiff also alleged that "[t]his is a case of Admiralty and Maritime Jurisdiction," the Court of Appeals noted that this allegation was insufficient to invoke Rule 9(h) and thus designate the action as one in admiralty. *Smith, supra*, at 996–97 n. 2 (citing *Banks v. Hanover Steamship Corp., supra*). Indeed, "the weight of authority" favors an explicit identifying statement in accordance with Rule 9(h) in order for the pleader to invoke the special procedures of admiralty. 2A Moore, *Federal Practice*, ¶ 9.09 at 9–90 (1987). *See also* Official Forms 2 and 15 to the Federal Rules of Civil Procedure.[8]

In his original complaint plaintiff asserted claims for negligence under the Jones Act and for unseaworthiness under the general maritime law. He premised jurisdiction upon the Jones Act, i.e. federal question jurisdiction, 28 U.S.C. § 1331, and upon federal diversity jurisdiction, 28 U.S.C. § 1332.[9] Plaintiff's Original Com-

6. Fed.R.Civ.P. 14(a) provides in part:
 When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

7. *See, e.g.,* Fed.R.Civ.P. 14(c), 38(e), 82; Supplemental Rules for Certain Admiralty and Maritime Claims, Rules A–F. *See also* 28 U.S.C. § 1292(a)(3).

8. Official Forms 2(d) and 15 which accompany the Federal Rules of Civil Procedure, as amended in 1966, indicate that if the pleader wishes to avail himself of the special admiralty rules, he should include with the jurisdictional allegation a statement to the effect that: "This is an admiralty or maritime claim within the meaning of Rule 9(h)."

9. Diversity jurisdiction is not applicable, *see* footnote 1 *supra*, however this action is properly triable as a suit at law cognizable under our federal question jurisdiction. 28 U.S.C. § 1331; 46 U.S.C. § 688.

plaint, ¶ 1. Plaintiff also included a jury demand. *Id.* at ¶ 12. Nowhere did he include any statement identifying his claims as admiralty or maritime claims within the meaning of Rule 9(h). Plaintiff amended his complaint twice to add additional defendants; however, he made no other changes to his original pleading. Therefore, because plaintiff has filed this action and (1) has established that we have federal question jurisdiction pursuant to the Jones Act over this matter, (2) demanded trial by jury, which is not available in admiralty, and (3) not made a Rule 9(h) declaration identifying his claims as admiralty or maritime claims, we hold that plaintiff's action is properly triable as a suit at law and defendants are not entitled to invoke the benefits of Rule 14(c).

### 2. Maritime Tort

Even though we hold that defendants have used Rule 14(c) improperly, we shall proceed to address defendants' contentions regarding our subject matter jurisdiction. In their third party action, defendants charge Dr. Blanda with medical malpractice in his treatment of plaintiff. Defendants' first contention in support of our jurisdiction is that medical malpractice, as it exists in this proceeding, is a "maritime tort".

 Whether admiralty jurisdiction of a tort claim exists is a two-part determination: (1) There must be "maritime locality", i.e. the injury must occur on or over navigable waters; and (2) There must be a "maritime nexus"—a significant relationship between the wrong and traditional maritime activities, involving navigation or commerce on navigable waters. *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 673, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300, 305 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972); *Molett v. Penrod Drilling Co.,* 826 F.2d 1419, 1426 (5th Cir.1987); *Woessner v.*

*Johns–Manville Sales Corp.,* 757 F.2d 634, 638 (5th Cir.1985). Defendants' third-party claim does not satisfy either part of this test.

 Unlike a case involving aircraft, *see Executive Jet,* 409 U.S. at 266, 34 L.Ed. 2d at 466, the locus in this case is not difficult to determine. It is clear under the facts of this case that the medical malpractice, if any, occurred on land, *not* "on or over navigable waters." The medical treatment rendered by Blanda began four months after the plaintiff's initial injury offshore. The "substance and consummation" of the treatment occurred entirely on land. *Smith & Son, Inc. v. Taylor,* 276 U.S. 179, 180, 72 L.Ed. 520, 522–23, 48 S.Ct. 228 (1928).[10]

Defendants rely on *Parker v. Gulf City Fisheries, Inc.,* 803 F.2d 828 (5th Cir.1986), wherein the court held that a third-party complaint against a physician that treated a seaman was cognizable within admiralty jurisdiction. *Id.* at 829. The facts in the present case, however, are clearly distinguishable from those in *Parker.*

In *Parker* a seaman instituted suit against his employer, who in turn filed a third-party claim against the doctor who treated the seaman. The employer alleged that the doctor's negligence caused or aggravated the stroke which the seaman suffered shortly after his tour of duty at sea had ended. The court found that the land-based doctor had treated the seaman's complaints by giving advice to the seaman's wife while the seaman was working at sea. Thus, the court found maritime locality and also concluded that a sufficient maritime nexus existed. In reaching those findings, the court stated:

> It is difficult to conceive of a tort more intimately related to maritime activities than causing illness to a seaman *during the course of a voyage.* The functions and roles of the parties are maritime. Although Dr. Blanks carries out his prac-

---

**10.** Defendants contend that as a consequence of the alleged malpractice plaintiff may never return to work as a seaman. However, we consider this consequence too remote and indirect to indicate whether the alleged tort took effect "on or over navigable waters." Indeed, defendants would have us hold that every land-based injury to a seaman gives rise to a maritime tort, because the seaman will be absent from his work.

tice entirely on land and does not especially seek seamen as patients, he knew that Parker was serving as a ship's captain, and he knew that Parker was *at sea when he gave the medical advice.*

*Parker,* 803 F.2d at 830 (emphasis added; footnote omitted). Accordingly, the court held that admiralty jurisdiction existed "at least for the part of the [doctor's] negligence whose [sic] impact occurred at sea." *Id.* at 829.

In the case at bar, plaintiff was not working aboard a vessel on navigable waters at any time while he was receiving treatment from Dr. Blanda. On the contrary, plaintiff remained on land throughout the course of his medical treatment by Dr. Blanda. Thus, the medical treatment, whether negligent or otherwise, took place entirely on land and the effects of that treatment occurred entirely on land.

 Defendants' third-party claim also fails the nexus requirement of the two-part test. In determining whether a significant relationship to traditional maritime activities exists, we apply the three indicia suggested by the Supreme Court in *Executive Jet* and *Foremost Ins. Co.,* as paraphrased in *Molett v. Penrod Drilling Co.,* 826 F.2d 1419, 1426 (5th Cir.1987): (1) The impact of the event on maritime shipping and commerce; (2) The desirability of a uniform national rule to apply such matters; and (3) The need for admiralty "expertise" in the trial and decision of the case.[11] We apply these guidelines to the facts of this case.

We consider first the impact of the alleged malpractice on shipping and commerce. The activity involved in defendants' claims—a seaman receiving medical treatment from a private land-based physician—is not itself a form of maritime activity. The treating physician is not a ship's doctor. The function and roles of the parties involved are those of any land-based doctor-patient relationship. Certainly, a land-based physician does not engage in maritime business simply because during the course of his regular practice he treats a patient who happens to be an off-duty seaman. The maritime industry, like other industries, has regular procedures for replacing absent seamen whether the absence is brought about by sickness, old age, retirement, simple failure to report, quitting or otherwise. None of these has a significant, or indeed insignificant impact on maritime shipping. The hiring or replacement procedures are designed to insure that an absentee seaman will have no impact on maritime shipping. Thus the third-party plaintiffs have not established that this malpractice claim will have any impact on maritime shipping or commerce.

Nor is there any need or desirability for a uniform national rule to apply to Dr. Blanda's treatment of this off-duty seaman. In fact, it is nationally recognized that the standards of medical malpractice are a matter of local and state concern. "We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is *state* law which controls in cases such as this." *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1038 (5th Cir.), *appeal following remand,* 688 F.2d 256, 260–61 (5th Cir.1982), (citing *United States Lines, Inc. v. U.S.,* 470 F.2d 487, 491 (5th Cir.1972) (hospital located in Texas, Texas state law applied to shipowner's third-party claim against hospital)); *Penn Tanker v. U.S.,* 409 F.2d 514, 519 at n. 9 (5th Cir.1969) (hospital located in Georgia, Georgia state law applied to shipowner's third-party claim against hospital); *McCann v. Falgout Boat Co.,* 44 F.R.D. 34 (S.D.Tex.1968) (shipowner's third-party claim against doctor arises under state law); *Wood v. Standard Products Co., Inc.,* 456 F.Supp. 1098, 1103 (E.D.Va.1978) (injured seaman's claim against onshore

---

11. We also consider the similar, but differently worded, factors set forth in *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974): (1) The functions and roles of the parties; (2) The types of vehicles and instrumentalities involved; (3) The causation and the type of injury; and (4) Traditional concepts of the role of admiralty law. *See Molett,* 826 F.2d at 1426.

doctor does not arise under federal maritime law, but is a state law claim pendent to an admiralty action). On the contrary, the facts and authorities establish and recognize the need for local and state control of medical malpractice claims. The Louisiana Legislature has expressed its special interest in providing for the uniform treatment of medical malpractice claims brought against health care providers qualified to practice in Louisiana. *See* La.R.S. 40:1299.-41 *et seq.*

The third indicia establishing nexus is the need for admiralty expertise. If there is a need for admiralty expertise in the trial of this medical malpractice claim, the defendants have failed to disclose it. The record is absolutely bare. Must Dr. Blanda be skilled in seamanship, the care, maintenance and use of vessels and maritime equipment? Did he violate the rule of the sea?

The traditional concepts of the role of admiralty law do not justify treating this matter as a maritime tort. In *Executive Jet, supra,* the Supreme Court described the matters which traditionally have been the concern of admiralty law. Such matters include dealing with navigational rules, apportionment of liability for maritime disasters, protection of seamen aboard ship, and establishment of uniform rules for maritime liens, captures of prizes, liability for cargo damage, and claims for salvage. 409 U.S. at 269–70, 93 S.Ct. at 505, 34 L.Ed.2d at 468. In *Foremost Ins. Co.,* the court also pointed out that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." 457 U.S. at 674, 102 S.Ct. at 2658, 73 L.Ed.2d at 305. The need for a uniform development of the law governing the maritime industries is also an overriding concern of federal courts when applying admiralty law. *Foremost Ins. Co., supra,* at 677, 102 S.Ct. at 2659, 73 L.Ed.2d at 307; *Peytavin v. Govt. Employees Ins. Co.,* 453 F.2d 1121, 1127 (5th Cir.1972). "Disputes not involving these interests are not within the admiralty jurisdiction of the federal courts." *Harville v. Johns–Manville Products Corp.,* 731 F.2d 775, 786 (5th Cir.1984).

We are guided by the Supreme Court's admonition in *Executive Jet* that federal courts are to interpret congressional grants of admiralty jurisdiction restrictively where their exercise may preempt state regulation of matters traditionally committed to local resolution:

> [I]n determining whether to expand admiralty jurisdiction, "we should proceed with caution...."
>
> "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined."
>
> In the situation before us, which is only fortuitously and incidentally connected to navigable waters and which bears no relationship to traditional maritime activity, the [state] courts could plainly exercise jurisdiction over the suit, and could plainly apply familiar concepts of [state] tort law without any effect on maritime endeavors.

*Executive Jet,* 409 U.S. at 272–73, 93 S.Ct. at 506–07, 34 L.Ed.2d at 470 (citations and footnotes omitted). Therefore there is a complete absence of any maritime nexus or significant relationship between the alleged malpractice and traditional maritime activities involving navigation or commerce on navigable waters.

Having failed both the "maritime locality" and the "maritime nexus" tests, we hold that the defendants' third-party claims against Dr. Blanda is not a maritime tort and does not invoke federal admiralty jurisdiction.

### 3. *Claims For Indemnity and Contribution*

■ Defendants argue that their claims for indemnity and contribution are governed by maritime law since plaintiff's claims against defendants are maritime.

As already discussed, defendants' third-party claims are not independently cognizable under federal admiralty jurisdiction as a maritime tort. These are state law claims that must be adjudicated under Louisiana's law of contribution and indemnity.

*See Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1039–40 (5th Cir.), *appeal following remand,* 688 F.2d 256, 260–61 (5th Cir.1982).

#### 4. *Maritime Contract*

■ Dr. Blanda's treatment of the plaintiff did not give rise to an implied maritime contract. "A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract." *Joiner v. Diamond M. Drilling Co.,* 677 F.2d at 1038 and 688 F.2d at 260. *See also, Penn Tanker v. U.S.,* 409 F.2d 514, 517–18 (5th Cir.1969).[12]

#### 5. *Ancillary Jurisdiction And Rule 14(a)*

■ Defendants contend that we have jurisdiction over their third party claim under the doctrine of ancillary jurisdiction. It appears settled in the Fifth Circuit that a third party state-law claim which lacks independent jurisdictional grounds may be appended to a main admiralty claim under the doctrine of ancillary jurisdiction. *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035 (5th Cir.1982).

However, we have held defendants are not entitled to invoke the procedural benefits of Rule 14(c). In order for defendants to bring their third-party complaint pursuant to our ancillary jurisdiction, defendants must invoke Rule 14(a). Defendants, however, have neither pled nor argued the applicability of Rule 14(a). Therefore, before addressing our ancillary jurisdiction in this matter, we consider the applicability of Rule 14(a).

Rule 14(a) provides in part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff* for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make

the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.... (emphasis ours)

Fed.R.Civ.P. 14(a) (as amended in 1987). The purpose of Rule 14(a) impleader is to "avoid circuity of action and eliminate duplication of suits based on closely related matters." 6 Wright and Miller, *Federal Practice and Procedure,* § 1443 (1971). *See also,* 3 Moore, *Federal Practice* 2d, ¶ 14:04. The rule is designed to promote judicial efficiency and fairness to the parties by providing a mechanism for resolving in one action multiple claims arising out of a single set of facts. *Id.* This policy, however, must be weighed against other factors, including delay and prejudice to the parties. Thus, the district court may "properly deny impleader when it would introduce an unrelated controversy or unduly complicate the case." 3 Moore, *supra* at ¶ 14.05[1].

As originally promulgated in 1937, Rule 14(a) allowed a defendant to implead "a person not a party to the action who is or may be liable to [the defendant] or to the plaintiff for all or part of plaintiff's claim" against defendant. However, the words "or to the plaintiff" were deleted by amendment in 1946. As the rule now reads, a defendant is permitted only to implead a party "who is or may be liable" to defendant for all or any part of "the plaintiff's claim" against defendant. Thus, a defendant has no right under Rule 14(a) to implead a non-party who is only liable to plaintiff. However, it is possible that Dr. Blanda could be said to be liable to defendants for contribution or indemnity under a Louisiana theory of solidary liability even though the doctor is liable only to plaintiff Harrison under the substantive cause of action—medical malpractice. We need not decide this matter however because under Rule 14(a), as well as ancillary jurisdiction, we must exercise our discretion in order to

---

**12.** We have held that state law governs defendants' claims for indemnity and contribution. *See supra.* Louisiana law prohibits prosecution of a medical malpractice claim on a theory of implied contract or implied warranty. La.Rev. Stat. 40:1299.41(C).

accept jurisdiction over this third-party claim. The purposes of Rule 14(a) and ancillary jurisdiction being essentially identical, we are guided by the standards established for the exercise of discretion under the latter doctrine.

Because ancillary jurisdiction is a "doctrine of discretion," "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966). These "practical needs are the basis of the doctrine of ancillary jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365 at 377, 98 S.Ct. 2396 at 2404, 57 L.Ed.2d 274 at 284 (1978).

As a constitutional minimum, our power of incidental jurisdiction, whether ancillary or pendent, requires that "the state and federal claims must derive from a common nucleus of operative facts." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228. We question whether a common nucleus exists between plaintiff's main claims and defendants' third-party claims. As regards quantum, there is arguably a common nucleus: both claims concern plaintiff's injury, sustained either as a result of the negligence of the defendants, or Dr. Blanda, or both. We find that such factual connection is not sufficient to satisfy the constitutional requirements necessary to invoke our ancillary jurisdiction. *Cf. Feigler v. Tidex,* 826 F.2d 1435 (5th Cir.1987). We discern no factual similarities in the sources of the federal and state claims before us. The federal claims involve the transportation of a seaman on navigable waters by his employer; the state claims concern the medical treatment of a seaman by his land-based physician. The disparate legal theories, Jones Act negligence and unseaworthiness on the one hand, and medical malpractice on the other hand, reflect this lack of similarity in the operative facts before us. Even if our exercise of jurisdiction is constitutionally permissible however, our inquiry would not end there.

We find it would not serve the purposes of Rule 14(a) and the doctrine of ancillary jurisdiction to accept jurisdiction over defendants' third-party demand. Permitting impleader and trying defendants' medical malpractice claim together with plaintiff's unrelated maritime claims would not promote judicial efficiency.[13] Indeed this is no longer a matter of concern. Plaintiff has now settled his claim for the sum of $300,000.00. Now the third-party demand, a state claim, is the only issue before the court. Certainly the proper court for trial is the state court. *Joiner v. Diamond M Drilling Co., supra.* "Needless decisions of state law should be avoided ... as a matter of comity." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228. However, our discretion is not unlimited. *Joiner, supra,* at 1042. The *Joiner* court set forth the factors we must consider:

> Where the main federal action has been settled prior to trial, considerations of judicial efficiency and economy can no longer justify the continued exercise of federal jurisdiction over ancillary state-law claims; and considerations of comity and federalism militate in favor of dismissal. However, we recognize that a federal court may retain and adjudicate ancillary state-law claims after a pretrial settlement of the main federal action if a dismissal would unduly prejudice the parties. For example, if the applicable statute of limitations has run during the pendency of the state claim in federal court, a dismissal might deprive the parties of any forum. In such a case, a federal court would be justified in retaining jurisdiction over the ancillary state-law claims. Similarly, if litigation over the ancillary claims has proceeded apace and the parties have already prepared their case in reliance upon the availability of a federal forum, dismissal might

---

**13.** Some commentators, after explaining that the purpose of Rule 14 is to dispose of all issues related to a cause, suggest severance as the method of trying a suit which is complicated by the fact that certain of the issues are so dissimilar that they cannot reasonably be tried together. 6 Wright & Miller, *Federal Practice and Procedure,* § 1443 at 212–15 (1971). But severance means more than one trial. If you must try each dissimilar issue separately, then you eliminate the judicial economy Rule 14 was designed to achieve.

not be required. However, "... when no extensive proceedings on the ancillary claim have begun in federal court, the trial court should dismiss the ancillary claims." *Putnam v. Williams*, 652 F.2d 497, 502 (5th Cir.1981).

*Id.* at 1043 (footnotes omitted). *See also, Waste Systems, Inc. v. Clean Land Air Water Corp.*, 683 F.2d 927 (5th Cir.1982); *Rosario v. American Export–Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1233 n. 17 (3d Cir.1976).

No factors are present in this case which compel or persuade us to maintain jurisdiction. Plaintiff's complaint interrupted prescription against all solidary obligors. La. C.C. art. 1799, 3462. Therefore, no prescriptive period has run. No trial has taken place. Any discovery can be utilized in a state court proceeding. Indeed, discovery is still continuing. *See* Third Party Defendant's Memorandum in Support of Motion to Continue Trial. Furthermore, the practice of medicine in Louisiana is a matter in which the State of Louisiana, rather than the federal judiciary, has a fundamental concern. Louisiana has an extensive Medical Malpractice Act which provides for administrative review of all malpractice claims. LSA–R.S. 40:1299.41. Louisiana statutory law defines the standard of care and burden of proof in malpractice claims. LSA–R.S. 9:2794.

We are hard-pressed to accept the substantiality of defendants' claims where the plaintiff was the subject of medical treatment by Dr. Blanda but third parties (defendants) are seeking redress against him.

It was indicated to us at oral argument on October 7, 1987 that plaintiff was satisfied with Dr. Blanda and that he was still under Dr. Blanda's treatment at that time. If the patient is satisfied, it is difficult to discern a valid cause for defendants' concern.[14]

For these reasons we decline to retain our jurisdiction and dismiss defendants' third-party demand.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED:

■ Even if we retained jurisdiction, we would be compelled to dismiss this action as being premature.

■ Under Louisiana law, no action against a health care provider "may be commenced in any court before the claimant's proposed complaint has been presented tб a medical review panel...." LSA–R.S. 40:1299.47(B)(1)(a)(i); *Derouen v. Kolb*, 397 So.2d 791 (La.1981). The submission of medical malpractice claims to a review panel prior to suit is a substantive rule of law. *Seoane v. Ortho Pharmaceuticals, Inc.*, 472 F.Supp. 468, 471 (E.D.La. 1979). *See also, Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir.1979) (Florida's Medical Malpractice Act interpreted). All claimants, including "a non-patient, non-representative of the patient, claiming contribution or indemnity for substandard medical care against qualified health care providers, must utilize the medical review panel procedures prescribed by the Medical Malpractice Act prior to litigation of [their] claim." *Thomas v. LeJeune, Inc.*, 501 So. 2d 1075 (La.App. 2d Cir.1987).

---

**14.** As part of the consideration for his settlement, plaintiff assigned his dormant malpractice claim against Dr. Blanda to defendants. It is possible that plaintiff's claim against Dr. Blanda had prescribed prior to assignment. Could the filing of defendants' third-party action against Dr. Blanda on June 4, 1987 interrupt the running of prescription in Blanda's favor? Since plaintiff had made no claim against Dr. Blanda prior to the assignment and was still under his treatment in November 1987 (and perhaps to this date), we must assume that he had no intention of making such a claim at the time that he made the assignment.

Defendants' contribution claim is empty unless supported by the plaintiff's substantive malpractice claim. Under the theory of solidary liability, defendants' payment of $300,000.00 represents the total liability to the plaintiff and Dr. Blanda's contribution as a solidary obligor could amount to no more than his proportionate fault. There are other questions such as the reasonableness of the settlement which may, on trial, have an effect on the claims and liabilities of the parties. These are issues of Louisiana law, and some of them are not well defined. They should be addressed to a state court in Louisiana.

Dr. Blanda is a qualified medical health care provider as defined within LSA–R.S. 40:1299.41 *et seq.* *See* Motions by Louis Blanda. The defendants/third-party plaintiffs have asserted negligence claims against Dr. Blanda, within the scope of LSA–R.S. 40:1299.41(A)(4). *See* Third–Party Complaint. Thus, the third-party claims against Dr. Blanda are dismissed because the defendants have failed to allege the completion of the medical review panel process as required by state law.

CONCLUSIONS:

The third-party complaint of Glendel, Union, and GCH against Dr. Blanda is therefore DISMISSED, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.