Fathi **MASHERAH**, as Personal Representative of the Estate of Yahya Ahmed Masherah, Plaintiff,

v.

Dr. Dennis F. **DETTLOFF**, Defendant.

No. 96–CV–72978–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 11, 1997.

John S. Hone, Birmingham, MI, for Plaintiff.

Thomas C. Kates, Traverse City, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

ROSEN, District Judge.

### I. INTRODUCTION

This action involves a medical malpractice claim which Plaintiff has brought before this Court alleging admiralty (general maritime) jurisdiction under 28 U.S.C. § 1333(1) as the basis for federal subject matter jurisdiction.

Presently before the Court are Defendant's two Motions to Dismiss this action. In the first of these Motions, Defendant argues that the Court lacks subject matter jurisdiction over this matter and, therefore, seeks dismissal pursuant to Fed. R. Civ. Pro. 12(b)(1). In the second Motion, Defendant argues that Plaintiff has failed to state a claim on which relief can be granted and seeks dismissal pursuant to Rule 12(b)(6). Plaintiff has responded to both of these mo-

tions, to which responses, Defendant has replied.[1]

Having reviewed and considered the parties' respective briefs, and having heard the oral arguments of counsel at the hearing held on June 5, 1997, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff's decedent, Yahya Ahmed ("Jack") Masherah, was a general labor seaman who during his career worked for various Great Lakes shippers. From 1993 until his death on April 22, 1995, Mr. Masherah's employer was Inland Lakes Management, Inc.

Pursuant to a contract under the Seafarers Welfare Plan, Dr. Dennis Dettloff, the Defendant in this action, conducted approximately six annual pre-employment physical examinations of Mr. Masherah at the start of the year in 1988, 1989, 1992, 1993, 1994 and 1995. EKGs (electrocardiograms) were a standard part of the annual examinations. Dr. Dettloff's practice is in Alpena, Michigan. All of the examinations of Plaintiff's decedent were conducted at Dr. Dettloff's Alpena office.

On April 22, 1995, two months after his last physical examination by Dr. Dettloff in February 1995, while working on an Inland Lakes Management shipping vessel on Lake Huron, Mr. Masherah suffered an acute myocardial infarction and died.

Fathi Masherah, the personal representative of Mr. Masherah's estate, is now suing Dr. Dettloff alleging that the EKGs conducted during Mr. Masherah's physical examinations showed abnormalities and the Dr. Dettloff committed medical malpractice in his failure to diagnose coronary artery disease. Plaintiff has filed this malpractice suit in this federal court invoking federal admiralty jurisdiction because Mr. Masherah died while on board a Great Lakes shipping vessel.

1. Contemporaneously with the filing of her Responses to the Motions to Dismiss, Plaintiff also filed a Motion for Leave to File a Second Amended Complaint to add a second count for "Maritime Breach of Contract" in which Plaintiff contends that Mr. Masherah was a direct or a third-party beneficiary of an alleged contract between his employer or his union and Dr. Dettloff, through which contract Plaintiff contends that an implied duty to exercise due care arose.

## III. DISCUSSION

### A. DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

A federal court's authority to hear cases in admiralty flows initially from the Constitution which "extend[s]" federal judicial power "to all Cases of admiralty and maritime jurisdiction." U.S. Const., Art. III, § 2. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 530–532, 115 S.Ct. 1043, 1047, 130 L.Ed.2d 1024 (1995). Congress subsequently embodied that power in a statute giving federal district courts "original jurisdiction ... of ... [a]ny civil cases of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333(1).

The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters. *See Thomas v. Lane*, 23 F. Cas. 957 (C.C.Me.1833). However, this rule was changed in 1948 by the Extension of Admiralty Jurisdiction Act to vest courts with admiralty jurisdiction in cases in which the injury was caused by a ship or vessel on navigable water, but the effect of the injury occurred on land. The Extension Act provided as follows:

> The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

46 U.S.C.App. § 740. *See also, Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 209–210, 83 S.Ct. 1185, 1187–1188, 10 L.Ed.2d 297 (1963).

The extension of admiralty jurisdiction rule was subsequently qualified by the Supreme Court in a series of cases beginning with the Court's 1972 decision in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

*Executive Jet* involved tort claims arising out a wreck of an airplane that collided with

a flock of birds after take-off and fell into the navigable waters of Lake Erie. Finding no admiralty jurisdiction,the Supreme Court made clear that "if the wrong occurred on navigable waters, the action is within admiralty jurisdiction if the wrong occurred on land, it is not." 409 U.S. at 253, 93 S.Ct. at 497. The Court then went on to add that even if the wrong occurs on navigable waters, a sufficient nexus must link the wrongful act with a maritime activity. "It is far more consistent with the history and purpose of admiralty to require ... that the wrong bear a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504.

Thus, *Executive Jet* stands for the proposition that despite an "on navigable waters" location of the harm, claims are not cognizable in admiralty "unless the wrong bear[s] a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504.

This rule was reiterated ten years later in *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). That case involved tort claims arising out of the collision of two pleasure boats in a river. Although conceding that pleasure boats themselves had little to do with maritime commerce, which lies at the heart of admiralty, the Court nonetheless found the necessary relationship to traditional maritime activity in

> [t]he potential disruptive impact [upon maritime commerce] of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation....

457 U.S. at 675, 102 S.Ct. at 2658.

Subsequently, in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court established a two-step process for determining whether an activity is a "traditional maritime activity". First the court must define the "relevant activity." The *Sisson* court noted that the relevant "activity" is not defined by a particular set of circumstances, but rather by the general conduct from which the incident arose. 497 U.S. at 364–366, 110 S.Ct. at 2897. The Court determined that in that case—which involved a fire caused by a defective washer/dryer on a pleasure boat docked in a marina which burned the boat, other boats docked nearby and the marina itself—that the relevant activity was storage and maintenance of a vessel on navigable waters. 497 U.S. at 364–368, 110 S.Ct. at 2897–2898. (By contrast, in *Executive Jet*, for example, the relevant activity was not a plane sinking in Lake Erie, but air travel generally. 409 U.S. at 268–269, 93 S.Ct. at 504.)

The second part of the *Sisson* inquiry does not turn on the particular set of facts of the incident such as the specific location of the accident or the type of boat involved. Rather, the court must assess whether the general character of the conduct from which the incident arose shows a substantial relationship to traditional maritime activity. 497 U.S. at 362–364, 110 S.Ct. at 2896. The Court found that the burning of docked boats at a marina on navigable waters was of a sort "likely to disrupt [maritime] commercial activity." *Id.*

In its most recent admiralty opinion, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), after tracing the historical development of admiralty jurisdiction, the Supreme Court refined the rules developed under *Executive Jet, Foremost,* and *Sisson* and enunciated a three-part test as follows:

> After *Sisson*, then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with a maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

513 U.S. at 534, 115 S.Ct. at 1048 (citations omitted).

■ Thus, satisfaction of this test requires affirmative answers to the following three questions:

*LOCALITY*

(1) Did the tort *occur* on navigable waters?

*CONNECTION*

(1) Does the conduct complained of have a potentially disruptive impact on maritime commerce?

(2) Does the character of the activity show a substantial relationship to traditional maritime activity?

## (1) *THE LOCALITY TEST IS NOT SATIS-FIED IN THIS CASE*

■ The first element which the Supreme Court has determined must be satisfied for admiralty jurisdiction is the "locality" element. To satisfy this element, the tort must have occurred upon navigable waters. Satisfaction of this element generally presents no problem when the "tort" is a personal injury or product liability tort because in such cases the tort can only occur because of "contact" with a vessel or a product on board the vessel. *See, e.g., Foremost Ins. Co. v. Richardson, supra* (personal injury action arising out of injuries sustained by plaintiffs when two pleasure crafts collided on navigable waters); *Harville v. Johns–Manville Products Corp.,* 731 F.2d 775 (11th Cir.1984) (asbestos exposure action arising out plaintiffs' exposure to asbestos while working on board ship); *Brown v. Outboard Marine Corporation,* 1995 WL 795704 (E.D.Mich.1995) (negligent design/manufacture failure to provide safeguards claim arising out of injuries suffered by plaintiff while attempting to board vessel after "tubing" in navigable waters when propeller on boat continued to rotate even though the engine had been placed in neutral).

By contrast, in this case, Plaintiff's admiralty "tort" claim is the medical malpractice arising out of Dr. Dettloff's alleged negligent examination of Plaintiff's decedent **on land.**

As the Eleventh Circuit pointed out in *Harville, supra,* in delineating which of the plaintiffs' claims in that asbestos exposure case fell within the district court's admiralty jurisdiction, while sailors' claims arising out of onboard asbestos exposures would satisfy the maritime locality test, sailors' "claims arising from **land-based** exposures do not meet the situs test." 731 F.2d at 783.

The "on land" vs. "onboard" distinction has particular application in the medical malpractice area. Although no Sixth Circuit law appears to exist concerning admiralty jurisdiction and medical malpractice claims, there are a number of federal and state cases out of the Fifth Circuit, a geographic area where a substantial amount of maritime activity takes place, and those cases provide guidance.

In *Miller v. Griffin–Alexander Drilling Co.,* 873 F.2d 809 (5th Cir.1989), the plaintiff, Kally Miller, was a mud man who worked aboard a drilling barge. He injured his leg while working on the barge. Three doctors and treated Miller on shore. He returned to work only for a few days only after his initial treatment by the first doctor. After treating with the second and third doctors, a series of operations were ultimately performed on Miller which culminated in the amputation of his injured leg below the knee.

Miller sued his employer and the employer's insurer in federal court under admiralty/maritime jurisdiction. He then filed an amended complaint adding the three doctors alleging medical malpractice. The district court dismissed the medical malpractice claims against the doctors for lack of admiralty jurisdiction. The Fifth Circuit affirmed explaining:

> [T]he plaintiff in today's case seeks to bootstrap his claim into federal court by arguing that his condition merely worsened [when he returned to work] onboard the ship. The flaw in this argument, however, is that the alleged malpractice did not take place on navigable waters as it did in *Parker [v. Gulf City Fisheries, Inc.,* 803 F.2d 828 (5th Cir.1986) ]. . . .

The stated purpose of the [Admiralty Extension] Act was to correct inequities not to create new causes of action. If the

doctors committed medical malpractice, there is a common law remedy in state court. We see no reason for expanding admiralty jurisdiction to cases with such scant involvement of maritime locations.... [W]e agree with the trial court that a maritime locality is lacking.

873 F.2d at 812.

Relying on *Miller*, the Louisiana Court of Appeals found the locality test not satisfied in *Williams v. Reiss*, 643 S.2d 792 (La.App. 1994), a case factually similar to this action. In Williams, the defendant doctor, who had a land-based practice, performed a pre-employment physical on the plaintiff and examined him one other time for a back injury prior to the injury giving rise to the action. The injury giving rise to the action was another back injury suffered by the plaintiff while working as a deckhand onboard a commercial tugboat. Williams claimed the injury occurred because the doctor failed to diagnose or warn him that he had a back condition. The court found no admiralty jurisdiction[2] over the plaintiff's claims of medical malpractice against the doctor because only the "effect" of the alleged malpractice—the injury to his back—occurred while he was working onboard a vessel in navigable waters. The court explained:

> The only basis in this case for meeting the "maritime locality" requirement is that the last act necessary to give rise to Williams' cause of action occurred on navigable water.
>
> \*      \*      \*      \*      \*      \*
>
> To conclude that Williams satisfies the locality requirement where he was examined and treated on land would require an expansion of admiralty jurisdiction beyond that contemplated by the Fifth Circuit in *Miller*.

643 S.2d at 795. *See also, Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413 (W.D.La. 1988) (locality test not satisfied where the plaintiff was injured at sea but the medical treatment and effects of that treatment occurred entirely on land).

By contrast, where all or part of a defendant-doctor's treatment or medical care physically took place on board a vessel on navigable waters, courts have found the maritime locality test satisfied. For example, in *Parker v. Gulf City Fisheries, Inc.*, 803 F.2d 828 (5th Cir.1986), a case relied upon by Plaintiff, a ship captain aboard a vessel had telephoned his wife on shore, who noticed that he stuttered and appeared confused and forgetful. His wife spoke twice with a landside private physician about her husband's symptoms and related the doctor's medical advice to her husband onboard the ship. Mr. Parker subsequently suffered a stroke. The Fifth Circuit found that under the "unique" facts of *Parker*, i.e., the dispensing of the doctor's medical advice via the plaintiff's wife's communications to the plaintiff while he was on board a vessel on navigable waters, the locality test for admiralty jurisdiction over the medical malpractice claim was satisfied. In reaching this conclusion, the *Parker* court was particularly persuaded by the fact that in passing on medical advice to the plaintiff's wife to be relayed to him, "Dr. Blank knew he was treating a seaman aboard a ship." 803 F.2d at 830. *See also, Antoine v. Zapata Haynie Corp.*, 777 F.Supp. 1360 (E.D.Tex.1991) (maritime locality test satisfied for medical malpractice claim where doctor radioed preliminary emergency treatment advice for treatment of injured seaman to captain of ship while it was still at sea).

Applying the cited authorities to the facts of this case, the Court finds that the maritime locality requirement for admiralty jurisdiction is not satisfied. No part of the treatment of Plaintiff's decedent was provided by Defendant while Mr. Masherah was on board a vessel on navigable waters. Rather, all of Dr. Dettloff's pre-employment physical examinations of Mr. Masherah, as well as his treatment (for injuries which were wholly unrelated to his coronary condition) took place on land. This case is more similar to *Miller* and *Williams* than it is to *Parker* and *Antoine*. The only nexus to a maritime locality is that the "effect" of the alleged mal-

---

**2.** State and federal courts have concurrent jurisdiction over maritime causes of action over "in personam" actions, i.e., where the defendant is a person, not a ship. *In re Chimenti*, 79 F.3d 534, 537 (6th Cir.1996).

practice (i.e., Plaintiff's heart attack and ultimate death) occurred onboard a vessel on navigable waters. The Court finds this thin nexus insufficient to establish a maritime locality.

## (2) THE TWO–PART CONNECTION TEST

■ As indicated above, in *Grubart*, the Supreme Court set forth two requirements needed to meet the connection test for admiralty jurisdiction:

(1) Does the conduct complained of have a potentially disruptive impact on maritime commerce?

(2) Does the character of the relevant activity show a substantial relationship to traditional maritime activity?

■ In this case, as Defendant conceded in its Brief and as the Court observed at the hearing on this matter, since Plaintiff's decedent was required under the Seafarers Collective Bargaining Agreement to undergo a pre-employment physical before being permitted to work on board a ship, a negligently performed pre-employment physical (such as that complained of by Plaintiff) could create a medical emergency upon a vessel and, thus, could potentially have a disruptive impact on maritime commerce. Therefore, the first prong of the connection test would be satisfied.

With respect to the second prong of the connection test—the relationship of the relevant activity to traditional maritime activity—the Court agrees with Defendant that the relevant activity is land-based medical treatment. As the Supreme Court made clear in *Sisson, supra*, the relevant activity is not to be characterized by the "particular circumstances of the incident" but by the "general conduct from which the incident arose" or the "general character of the activity". 497 U.S. at 364, 110 S.Ct. at 2897.

*Grubart* requires that there be a "**substantial** relationship between the relevant activity and traditional maritime activity." As the court in *Harrison v. Glendel Drilling Co., supra*, explained in finding no substantial relationship with a maritime activity in a medical malpractice case, which like the instant action, was predicated upon the medical malpractice committed by a doctor on land:

The activity involved in [the malpractice] claims—a seaman receiving medical treatment from a private land-based physician—is not ... a form of maritime activity. The treating physician is not a ship's doctor. The function and roles of the parties are those of any land-based doctor patient relationship. Certainly a land-based physician does not engage in maritime business simply because during the course of his regular practice he treats a patient who happens to be an off-duty seaman.

679 F.Supp. at 1420–21.

The *Harrison* court went on explaining:

[I]t is nationally recognized that the standards of medical malpractice are a matter of local and state concern. We can find absolutely no support for the proposition that an ordinary, private on-shore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is state law which controls in cases such as this.

\*    \*    \*    \*    \*    \*

In the situation before us, which is only fortuitously and incidentally connected to navigable waters, and which bears no relationship to traditional maritime activity, the [state] courts could plainly exercise jurisdiction over the suit, and could plainly apply familiar concepts of [state] tort law without any effect on maritime endeavors. *Id.*

In *Miller v. Griffin–Alexander Drilling Co., supra*, the Fifth Circuit also considered the relationship between the alleged medical malpractice and maritime activity and stated, "We conclude that medical malpractice on these facts bears no relationship at all to maritime activities." 873 F.2d at 813. The court also considered the traditional concepts of the role of desirability of uniform admiralty law and stated:

The appellants have failed to persuade us that the national interest would be served by applying admiralty jurisdiction to a malpractice claim against land based doc-

tors who dispensed medical treatment to an on shore mud man, far removed from the hazards of water-borne navigation. We are in fact convinced that finding admiralty jurisdiction for medical malpractice suits with no more relationship to maritime activities and dangers than those presented here would clearly violate principles of federalism and advance no federal interest. *Id.*

Like the courts in *Harrison* and *Miller,* the Court concludes in this case that no substantial relationship to traditional maritime activity exists with respect to Plaintiff's medical malpractice claim against land-based Dr. Dettloff. Even considering the fact that Dr. Dettloff's principal "treatment" of Plaintiff was a pre-voyage physical, Plaintiff's decedent was not onboard the vessel during the examination and, thus, had opportunity to seek alternative medical evaluation. Indeed, in *Harrison* and *Miller,* there was even a stronger link to traditional maritime activity because in those cases, the plaintiffs were injured while performing their ship-board duties and their land-based medical treatment upon which their medical malpractice claims were predicated was for those ship-board injuries.

As the court explained in finding no substantial relationship with traditional maritime activity with respect to the defendant-doctor's pre-employment physical of the plaintiff and his alleged failure to diagnose a back condition in *Williams v. Reiss, supra:*

> Although Dr. Reiss may have been negligent in treating Williams and that negligence may have been the cause-in-fact of Williams's injuries, it is only mere happenstance that Williams' injury came about through work in maritime employment. Williams could just has easily injured himself while engaged in personal activities, in which case there clearly would be no basis for the exercise of admiralty jurisdiction.

643 So.2d at 797.

So, too, in this case, it is only mere "happenstance" that Mr. Masherah suffered his heart attack while engaged in maritime employment. Such a tenuous connection clearly does not amount to a "substantial relationship" with a traditional maritime activity.

For all of the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's medical malpractice tort claim for lack of subject matter jurisdiction will be GRANTED.

## B. *PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT*

As indicated above, at the same time that Plaintiff filed her Response to Defendant's Motion to Dismiss, Plaintiff also filed a Motion for Leave to File a Second Amended Complaint to add a new count for "breach of maritime contract".[3] Plaintiff claims that Mr. Masherah was a direct or a third-party beneficiary of a contract that Defendant had with Mr. Masherah's "union and/or employer", which Plaintiff characterizes as a "maritime contract".[4] Plaintiff argues that, under Michigan law, implicit in all contracts, is a duty to exercise due care in performing the

---

3. As originally filed, in addition to seeking leave to amend to add a claim of breach of maritime contract against Dr. Dettloff, Plaintiff also proposed to add a Jones Act claim against Mr. Masherah's employer, Inland Lakes Management, under the theory that Dr. Dettloff was acting as agent of Inland Lakes and, therefore, Dr. Dettloff's alleged breach of contract is attributable to Inland Lakes. However, Plaintiff has subsequently withdrawn his proposed claim against Inland Lakes and now seeks leave only to add the breach of contract claim against Dr. Dettloff. [See Plaintiff's Notice of Withdrawal of Claim against Employer Inland Lakes Management, Only.]

4. Although Plaintiff alleges that the contract at issue was between Dr. Dettloff and Mr. Masherah's union and/or employer, in actuality, the contract is a "Health Facility Provider Agreement," between Dr. Dettloff and the "Seafarers Welfare Plan", a multi-employer trust find, which maintains a self-insured health care plan. [See Ex. C to Plaintiff's Reply to Defendant's Brief in Opposition to Plaintiff's Motion to Amend Complaint, p. 1, § 1.] The sole purpose of the contract is effectively to render Dr. Dettloff a participating provider of limited medical services [Agreement §§ 2 and 4 and Attachment A] and provide payment to Dr. Dettloff for those services through insurance coverage provided by the Seafarers Welfare Plan. It is a "non-exclusive" Agreement, expressly reserving the rights of the Plan, as well as of Dr. Dettloff, to "enter[ ] into similar arrangements with other parties." [Agreement § 8.07.]

contract.[5] It is this alleged duty of due care that Plaintiff argues was breached by Defendant.

Pursuant to Fed. R. Civ. Pro. 15(a), leave to amend is to be freely granted when justice so requires. However, it is well-settled that a court is justified in denying a motion to amend a complaint if the proposed amendment could not withstand a motion to dismiss. *Keweenaw Bay Indian Community v. Michigan,* 11 F.3d 1341 (6th Cir.1993); *Neighborhood Development Corp. v. City of Louisville,* 632 F.2d 21 (6th Cir.1980).

In order to determine whether Plaintiff's proposed "breach of maritime contract" claim could withstand a motion to dismiss, the Court must determine whether the contract between the Seafarers International Union and Dr. Dettloff is a "maritime contract." As the Supreme Court stated in *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991), the key inquiry is whether "the services actually performed pursuant to the contract are maritime in nature." 500 U.S. at 612, 111 S.Ct. at 2076.

It is well-settled that "a contract made on land, to be performed on land" is not within admiralty jurisdiction. *People's Ferry Co. v. Beers,* 61 U.S. 393, 20 How. 393, 15 L.Ed. 961 (1857). Thus, a contract to construct a ship is not a maritime contract; it is only preliminary to navigation. *Id. See also, J.A.R. Inc. v. M/V Lady Lucille,* 963 F.2d 96 (5th Cir.1992) ("Not every contract that touches incidentally on maritime activities is a maritime contract; for maritime character to attach, **'there must be a direct and proximate juridical link between the contract and the operation of a ship'** ". *Id.* at 98, quoting *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir.1986)); *Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874 (3rd Cir.1992) ("Courts have long recognized that in breach of contract cases, **admiralty jurisdiction arises only when the subject matter of the contract is 'purely' or 'wholly' maritime in nature."** *Id.* at 880.)

In support of the Motion to Amend, Plaintiff relies upon *Maritime Overseas Corp. v. United States,* 433 F.Supp. 419 (N.D.Cal.1977), *aff'd* in part, *rev'd* in part, 608 F.2d 1260 (9th Cir.1979). That case is inapplicable. In *Maritime,* while in port in Japan in the middle of an ocean voyage, a seaman became ill. The ship's captain telephoned the United States Naval Dispensary in Japan, which was a small, sparsely staffed medical facility, and made arrangements with the Dispensary to provide medical care for to the sailor. There were several other medical facilities in the area, several of which were much larger, with which the captain could have contracted for the treatment of the sailor, but the captain chose the Dispensary. After treating the seaman, at the urging of the patient seaman, Navy doctors gave him a "fit to return to duty" slip and he was returned to the ship. The ship left port. Ten days later the sailor collapsed on board the ship and died. Relying on the oral "contract" between the ship's captain and the Naval Dispensary, the sailor's family subsequently brought suit for breach of contract against the decedent's employer, Maritime Overseas Corporation in California state court. Maritime settled that action for $85,000 and then sued the United States for indemnification in federal court.

Plaintiff here relies upon the federal district court's characterization of the oral contract between the ship's captain and the Naval Dispensary as a maritime contract, explaining that the shipping companies have a contractual duty to provide medical care for their seamen who are injured or fall ill while in the service of the ship. 433 F.Supp. at 422. It was in fulfillment of that contractual duty that the ship's captain contracted with the Naval Dispensary to provide medical treatment for the sailor. *Id.* Thus, the court reasoned, the Dispensary doctors became agents for the shipping company. *Id.*

Thus, the *Maritime Overseas* case stands for the proposition that transactions involv-

---

5. Although Plaintiff relies on Michigan law for his assertion of an implied contractual duty, she ignores the fact that the contract at issue specifically "To the extent not preempted by Federal law, **this Agreement shall be governed and construed according to the laws of the *State of Maryland.*"** [Agreement, § 8.02.]

ing contracts for the medical care of a seaman *entered into while the seaman is in the service of the ship* fall within admiralty jurisdiction. The contract to perform pre-employment physicals in the instant action, by contrast, is more similar to a ship building contract, i.e., a contract deemed to be **preliminary** to navigation. Unlike the contract in *Maritime Overseas,* Dr. Dettloff's Agreement with the Seafarers' Welfare Plan, is clearly "a contract made on land, to be performed on land."

The Court, thus, concludes that the contract upon which Plaintiff predicates her proposed breach of contract claim is not a maritime contract. Therefore, as with Plaintiff's tort claim against Dr. Dettloff, admiralty jurisdiction would not exist for breach of contract, either.

Based upon the foregoing, the Court finds that Plaintiff's proposed Amended Complaint would not withstand a motion to dismiss. Therefore, the Court will DENY Plaintiff's Motion for Leave to File a Second Amended Complaint.

## IV. CONCLUSION

For all of the reasons stated in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be, and hereby is, GRANTED.[6]

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Second Amended Complaint be, and hereby is, DENIED.

Accordingly,

IT IS FURTHER ORDERED that this case be DISMISSED in its entirety without prejudice.

---

6. Defendant's separately filed Motion to Dismiss for Failure to State a Claim is DENIED as MOOT.