**PENN TANKER COMPANY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**PENN TANKER COMPANY, Appellee.**
**No. 25382.**

United States Court of Appeals
Fifth Circuit.
March 21, 1969.

Carl O. Bue, Jr., Royston, Rayzor & Cook, Ben L. Reynolds, Houston, Tex., for Penn Tanker Co.

James R. Gough, Asst. U. S. Atty., Houston, Tex., Walter H. Fleischer, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Morton L. Susman, U. S. Atty., for the United States.

Before ALDRICH*, GODBOLD and DYER, Circuit Judges.

DYER, Circuit Judge:

Penn Tanker Company, owner of the S. S. Penn Challenger, having settled a state court Jones Act[1] suit brought against it for the injury and death of a seaman, sought full indemnity against the United States under the Federal Tort Claims Act[2] asserting that although the shipowner was negligent, the Government's subsequent wrongs caused all of the damages. From a judgment of the

* Of the First Circuit, sitting by designation.

1. 46 U.S.C.A. § 688.

2. 28 U.S.C.A. § 1346(b).

District Court awarding Penn Tanker "fifty percent indemnity" it appealed and the Government cross-appealed. We reverse.

The seaman, Hodges, sustained welding burns to both eyes while working on board the S. S. Penn Challenger on August 15, 1963. Upon completion of the voyage he was issued a Master's Certificate to receive treatment and medical care. He was admitted to the United States Public Health Service Hospital in Galveston, Texas, in the latter part of August, 1968.

Hodges brought suit in a Texas state court against the vessel owner, Penn Tanker, under the provisions of the Jones Act and the maritime doctrine of unseaworthiness. While this suit was pending, Hodges on November 26, 1963, underwent an unsuccessful operation on his right eye for glaucoma and lost the sight in that eye. Hodges thereupon amended the ad damnum clause in his suit to increase it from $65,000 to $400,000. Penn Tanker sought to implead the United States as a third party defendant, but the United States successfully resisted this because it cannot be sued in state courts either under the Federal Tort Claims Act [3] or the Suits in Admiralty Act.[4] Penn Tanker then instituted this suit in the United States District Court seeking indemnity.

On March 6, 1965, Hodges committed suicide. Hodges' mother was substituted as party plaintiff in the state court action, and it was amended to add a wrongful death count with additional damages of $225,000. On June 7, 1965, the state court ruled that Penn Tanker was liable not only for the loss of Hodges' eye, but for all consequential damages resulting from Penn Tanker's negligence. The state court action was then terminated by a compromise agreement under which a consent judgment was entered. Mrs. Hodges was paid $24,500, less one-third attorney's fees and costs, by Penn Tanker in discharge of its liability for personal injuries, including the death of Hodges.

Penn Tanker also paid Mrs. Hodges $500 as consideration for an assignment of any claim she might have against the United States, provided, however, that Penn Tanker would pay Mrs. Hodges any amount in excess of $25,000 that it recovered from the United States.

Penn Tanker's suit against the United States in the District Court then proceeded to trial. There was abundant evidence to sustain the District Court's findings and conclusions that the treating and operating ophthalmologist at the U. S. Public Health Service Hospital at Galveston was a known alcoholic who was guilty of improper diagnosis and pre-operative work-up, improper surgery and improper post-surgical care which caused the loss of Hodges' right eye; that the United States was negligent in permitting its ophthalmologist to operate on Hodges; and that such negligence was the proximate cause of the unsuccessful eye surgery. Indeed, the Government concedes that the District Court's finding that the Government was negligent is not clearly erroneous. The lower court further found that Hodges' suicide was not caused by the loss of his right eye.

The District Court entered judgment awarding Penn Tanker $12,500 as "fifty (50%) percent indemnity," finding that Penn Tanker was precluded from obtaining full indemnity from the United States because Hodges had received a welding burn to his eyes on board Penn Tanker's vessel, and finding further that the glaucoma condition of his eyes would have been permanent if an operation had not been performed.

Penn Tanker seeks reversal because the District Court erred, it claims, in not awarding it indemnity for the full amount of $25,000 paid to Hodges' personal representative, together with recovery of attorney's fees and expenses. The Government, on the other hand, asserts that there was a failure of proof by Penn Tanker since there were a number of discrete elements of damages included in the Penn Tanker-Hodges settlement for

---

3. See note 2, *supra.*

4. 46 U.S.C.A. §§ 741, 742.

which the United States was not legally responsible.

With kinetic ingenuity Penn Tanker argues that the United States owes a legal duty to shipowners to insure that its Public Health Service facilities render reasonable medical care to seamen, and, failing that, full indemnity is recoverable whether the legal theory employed to impose indemnity sounds in contract, tort, or quasi contract, and whether admiralty law or local law be applied.

■ Before exploring this range of legal doctrines, it will simplify our task to first dispose of two factual issues controverted below and here. First, we fully agree with the finding of the District Court that the loss of Hodges' right eye was not causally connected with his suicide. Second, at the threshold and throughout the case, Penn Tanker has insisted that it did not cause Hodges' glaucoma condition and, further, that Hodges did not have the type of glaucoma which could be traumatically aggravated. This is contrary to the evidence in the state court depositions filed by Penn Tanker in the District Court. The expert opinion of the doctors deposed was that the burn received by Hodges aggravated a pre-existing glaucoma condition which ultimately required surgery. The state court and the lower court so found. We are not left with a definite or firm conviction that a mistake was committed or that the finding is clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; American Commercial Lines, Inc. v. Eusay, 5 Cir. 1968, 395 F.2d 717; Pure Oil Co. v. Bethlehem Steel Co., 5 Cir. 1968, 391 F.2d 249; Gulf Banana Co., Inc. v. Reefer Shipping Corp., Ltda., 5 Cir. 1968, 391 F.2d 287.

We now turn to the several theories of liability asserted by Penn Tanker.

Penn Tanker focuses upon the interrelationship between seamen, shipowners and the United States Public Health Service and argues that the statutory [5] and unique relationship of the parties not only imposes upon the Government an obligation to provide seamen with proper professional care, but when, as here, the shipowner has been required to pay for damages resulting from the breach of such duty, the shipowner is the beneficiary of the duty owed to the seamen, for the breach of which the shipowner is entitled to full indemnity. Adopting as its thesis an analogy to the implied warranty of workmanlike performance in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and its progeny, and invoking the principles of admiralty law which it argues are applicable, Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed. 2d 56, Penn Tanker urges that it is entitled to recover full indemnity from the Government under the Federal Tort Claims Act.[6] United States v. Yellow Cab Co., 1951, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523.

■ We are unable to perceive a uniqueness in the relationship of the parties that alters the legal consequences of their acts. The only thing that is unique about their relationship is that the shipowner saves the amount of maintenance and cure that it would otherwise be liable to pay if the Service facility were not available. Clearly, a shipowner's liability to a seaman for maltreatment of injuries caused by the shipowner's negligence is no different when a seaman goes to a Service facility than when he goes to a private facility. In these circumstances there can be no implied warranty running

---

5. 42 U.S.C.A. § 249 provides in part:
   (a) The following persons shall be entitled, in accordance with regulations, to medical, surgical, and dental treatment and hospitalization without charge at hospitals and other stations of the Service:

(1) Seamen employed on vessels of the United States registered, enrolled, and licensed under the maritime laws thereof, * * *.

6. See note 2 *supra*.

from the government to the shipowner. To borrow from Chief Judge Brown:

> While the maritime jurisprudence affords a fresh example that from little acorns big oaks may grow, we would doubt very much that the *Ryan* notion is to carry over to every conceivable relationship which might exist between a ship and a third party. * * *

Delta Engineering Corp. v. Scott, 5 Cir. 1963, 322 F.2d 11, 18, *cert. denied*, 1964, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176.

■ Furthermore, we are unwilling to accept Penn Tanker's tenuous argument that the relationship of Service hospitals and shipowners, concerning treatment of seamen, is comparable to those relationships which have been held to justify the application of *Ryan*. The right to indemnification in the *Ryan* type of cases is based upon a breach of a contractual obligation, *Ryan, supra* 350 U.S. at 133, 76 S.Ct. 232; Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service, Inc., 5 Cir. 1967, 377 F.2d 511, *cert. denied*, 1967, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118; Schwartz v. Compagnie General Transatlantique, S.D.N.Y.1968, 285 F.Supp. 473. Here there was no express or implied contractual relationship between the parties.

■ Finally, assuming *arguendo* an implied warranty running from the United States to Penn Tanker, we find no admiralty jurisdiction to support it. Admiralty jurisdiction of torts is limited to those which occur on the high seas or other navigable waters within admiralty cognizance. The Plymouth, 1865, 70 U.S. (3 Wall.) 20, 35, 18 L.Ed. 125; Cleveland Terminal & Valley R.R. Co. v. Cleveland Steamship Co., 1908, 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508; Chapman v. City of Grosse Pointe Farms, 6 Cir. 1967, 385 F.2d 962; Forgione v. United States, 3 Cir. 1953, 202 F.2d 249, *cert. denied*, 1953, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384; *see* Abramovitch v. United States Lines, S.D.N.Y.1959, 174 F.Supp. 587, n. 1. While a shipowner's contract to pay the medical expenses of a seaman is a maritime obligation, Kossick v. United Fruit Co., *supra* 365 U.S. at 735–737, 81 S.Ct. 886, because it stands in place of the absolute duty to provide maintenance and cure, which is a fringe benefit of a contract for service at sea, the government's obligation, through its Service facility, is to treat seamen on shore—a duty created by statute, not by admiralty law, and not incident to a contract with a seaman. *Ryan's* inapplicability absent admiralty jurisdiction is manifest.[7]

We find no merit to Penn Tanker's implied contractual warranty theory of indemnity against the government.

Penn Tanker, leaning heavily on United States v. Rothschild International Stevedoring Co., 9 Cir. 1950, 183 F.2d 181, sets

7. What we have said makes it unnecessary for us to discuss the parallelism sought to be drawn by Penn Tanker between those cases in which, where there is a contractual obligation, a breach has been based on a statutory violation which in turn has cast the vessel in liability, Kernan v. American Dredging Co., 1958, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382; Provenza v. American Export Lines, Inc., 4 Cir. 1963, 324 F.2d 660, *cert. denied*, 1964, 376 U.S. 952, and the violation by the Service facility in Galveston, Texas, of standards established by the American Medical Association. By the same token we are not confronted with the shipowner's right in admiralty to recover of full indemnity despite some negligence attributable to it, D/S Ove Skou v. Hebert, 5 Cir. 1966, 365 F.2d 341; T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir. 1966, 362 F.2d 745; Lusich v. Bloomfield Steamship Co., 5 Cir. 1966, 355 F.2d 770, or to measure the conduct of the shipowner in terms of preclusion. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., *supra*; Waterman Steamship Corp. v. David, 5 Cir. 1965, 353 F.2d 660. The conclusion which we have reached also pretermits a consideration of whether an implied contractual warranty falls within the ambit of the Federal Tort Claims Act.

out on a parlous journey to convince us that tort indemnity is viable today and is relevant to this case. *Rothschild* applied maritime tort indemnity where one person was described as passively negligent with the primary cause of the loss the active negligence of the other.[8] Penn Tanker candidly concedes that *Rothschild* was a stevedore case decided in 1950 and that such cases since *Ryan* are no longer decided in terms of tort concepts such as active and passive negligence, Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., *supra,* but contends that *Rothschild* has now been assimilated into *Ryan* and full indemnity is allowed even though the shipowner has been guilty of some fault.

We decline the invitation to encumber this opinion by dicta concerning the validity vel non of the asserted assimilation, for assuming its validity *arguendo,* we have already disposed of *Ryan* as inapplicable to this case.[9]

■ To support its quasi contractual liability theory Penn Tanker relies on Simpson Timber Co. v. Parks, 9 Cir. 1965, 1966 A.M.C. 1081, *rev'd,* 9 Cir. 1966, 369 F.2d 324, *vacated,* 1967, 388 U.S. 459, 87 S.Ct. 2115, 18 L.Ed.2d 1319, *modified,* 9 Cir. 1968, 390 F.2d 353 (en banc), in which a longshoreman was injured when he stepped through an improper crating of doors while they were being stored in the hold of a vessel. He sued the manufacturer of the doors alleging that the doors were negligently packaged, and the shipowner alleging that the vessel was unseaworthy. The shipowner claimed indemnity from the manufacturer. The Court said:

> The district court found that the manufacturer was negligent in packaging

the bundle of doors and in failing to warn of the danger, and that this negligence was the sole cause of the longshoreman's injuries. The court further found the vessel was unseaworthy because of the presence of the bundle, and for no other reason; and that the shipowner neither knew nor in the exercise of reasonable care could have known of the bundle's dangerous condition, and was not otherwise negligent.

> The shipowner's liability thus rested solely upon the shipowner's breach, without fault of its nondelegable duty to provide the longshoreman a safe place to work, and the unseaworthy condition was created solely by the manufacturer's wrongdoing. If the shipowner pays the judgment and thus discharges the manufacturer's obligation, the manufacturer cannot equitably retain the benefit thus conferred. In these circumstances, settled principles of quasi-contract require the manufacturer to hold the shipowner harmless.

*Id.* at 1089–90 (footnotes omitted).

That the ship in *Simpson* was cast in liability solely because of the manufacturer's wrongdoing is apparent. Penn Tanker would have us adopt the same rationale when there are two wrongdoers, "but the gravity of the wrong of the one seeking indemnity was much less serious than the other." For reasons that we have previously explicated, we find no merit to this contention.

With remarkable zest in exploring various theories of liability to relief from a situation "which is not of its own making and which justifiably entitles it to a remedy" against the Government, Penn

---

8. *Rothschild* is clearly distinguishable from the case *sub judice.* There the Government failed to correct a defect in the vessel and Rothschild full well knowing this, put its own employees to work relying upon the chance that nothing would happen.

9. The quantity of negligence argument pressed by Penn Tanker has found no

favor in Texas jurisprudence. The test of greater culpability is not considered the proper criteria. There must be a difference in the quality of the negligence, not in the quantity. Wheeler v. Glazer, 1941, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301; Houston Transit Co. v. Steele, Tex.Civ.App.1959, 324 S.W.2d 912.

Tanker has assiduously avoided a basis of liability that assesses the fault of the parties and apportions the damages accordingly.

There can be no doubt that Penn Tanker was under a legal obligation to pay Hodges and that the Government would have been liable to Hodges had he sued it. It is undisputed that Penn Tanker had no control or direction over Hodges (other than to furnish him with a Master's Certificate for treatment at a Service facility). Penn Tanker had no part in the selection of the hospital or the treating physician and was not even aware of Hodges' decision to submit to eye surgery. It had not the slightest opportunity to protect itself against the Government's negligence. A more equitable consideration could hardly be presented. Nor do we perceive any difficulty in the allocation of burdens between Penn Tanker and the Government whose liability is isolable. Of course, Penn Tanker cannot pass on its liability for damages to Hodges which would have occurred without the maltreatment by the Service facility's doctor or, conversely, the Government cannot be liable to Penn Tanker for more damages than would have been assessed against it in a direct suit by Hodges, Pedigo & Pedigo v. Croom, Tex.Civ.App.1931, 37 S.W.2d 1074, although this is the result contended for by Penn Tanker.

■ Although the original negligence of Penn Tanker may be in the law a proximate cause of the damages flowing from the subsequent maltreatment by the ophthalmologist at the Service facility, there is no reason why the ultimate burden of damages should not be distributed between Penn Tanker and the Government, with each made to bear that portion caused by its own negligent conduct. Musco v. Conte, 1964, 22 A.D.2d 121, 254 N.Y.S.2d 589; Herrero v. Atkinson, 1964, 227 Cal.App.2d 69, 38 Cal. Rptr. 490, 8 A.L.R.3d 629; Clark v. Halstead, 1949, 276 App.Div. 17, 93 N.Y.S.2d 49. See also cases collected in Annot., 8 ALR3rd 629, 641 et seq.

■ Alternatively, when Penn Tanker paid Hodges damages for which it was liable but which were caused by the Government's aggravation of the eye injury, it became an assignee by operation of law, to which the anti-assignment statute, 31 U.S.C.A. § 203 et seq., does not apply, United States v. Aetna Cas. & Surety Co., 1949, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, and stood in Hodges' shoes to prosecute his claim against the Government.

The Government urges, however, that the apportionment of damages made by the District Court, even assuming that the apportionment was made under a correct legal principle, was erroneous because it seems to have been made solely on the basis of responsibility for injuries to Hodges' right eye. Yet the settlement that Penn Tanker made with Mrs. Hodges compromised the Government's liability for a number of discrete elements of damages, for some of which it bears no responsibility, i. e., Hodges' wrongful death, the initial injury to each of Hodges' eyes, the condition of his left eye, pain and suffering before Hodges' operation, maintenance and cure, and the assignment of Mrs. Hodges' possible claims against the Government for which Penn Tanker paid her $500.00. These elements of damages should have been but apparently were not considered by the Court, the Government argues.

Penn Tanker replies that it was not liable for Hodges' death either, but nevertheless was sued for it in the state court. Without incorporating this claim in the judgment, Mrs. Hodges could have brought a later suit for wrongful death either against Penn Tanker or the Government, in which case Penn Tanker could have been impleaded. Also, in its effort to foreclose all possible claims that could be made in the state court Penn Tanker included maintenance and cure although there was no evidence that any amount was ever paid to Hodges or his personal representative. Furthermore, Penn Tanker argues that Hodges' unfortunate medical experiences triggered

a psychological fear in him that ruled out any consideration of operative treatment of the left eye. Penn Tanker finally iterates its position (with which we disagree) that the damages it was obiligated to pay in the State court action did not stem from any welding burns but solely from the neglect of the eye surgeon and the Government hospital, and that the Government is therefore liable to fully indemnify Penn Tanker.

The liability vel non of either party or both parties for the various elements of damages are matters for the consideration and determination of the District Court. If it did not consider them it should have done so. If it did consider them it should have articulated its disposition of them in its findings which it did not do.

■ Because of the paucity of the District Court's findings we cannot determine whether the damages were properly distributed so that each party was made to bear that portion caused by its own negligent conduct, or whether the District Court erroneously adopted some preclusion theory. Furthermore, while it is implicit in the court's findings and conclusions, and fully supported by the record that Penn Tanker was negligent and liable to Hodges, no express finding to this effect was made by the District Court. Nor do the findings apprise us whether the settlement made by Penn Tanker with Mrs. Hodges was fair and reasonable under the circumstances then existing. For these reasons the judgment of the District Court must be reversed and the cause remanded so that it can make new and appropriate findings of fact and conclusions of law. In this connection the District Court should determine and make a finding, first, whether Penn Tanker was in fact liable to Hodges. Then, if so, whether the settlement was for a reasonable amount. Next, what proportion was fairly attributable to the damages occasioned by the hospital malpractice for which the government is responsible as against the injury done by Penn Tanker, including the anticipatable ultimate consequences. If the District Court should find that the settlement was for too much, then the proportion should be of the maximum permissible figure.

■ Penn Tanker takes issue with the District Court's finding that it is not entitled to attorney's fees and reimbursement of expenses. In our view the District Court's denial was not plainly wrong. Penn Tanker concedes that it cannot recover attorney's fees for prosecuting this action against the Government. 28 U.S.C.A. § 2412.[10] Assuming without deciding the Government's liability for a proper apportionment of the fees and expenses incurred by Penn Tanker in defending the state court suit, there is no showing what fees and expenses Penn Tanker would have incurred in any event with respect to its liability, as distinguished from the Government's liability for the aggravation of Hodges' injuries and damages. We are therefore unwilling to disturb the District Court's findings concerning attorney's fees and expenses.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

10. In pertinent part § 2412 reads: "A judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States * * *."