**MARITIME OVERSEAS CORPORATION, a New York Corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. C–74–0568 RHS.**

United States District Court, N. D. California.

January 26, 1977.

**420**

Samuel A. Keesal, Jr., Scott T. Pratt, Long Beach, Cal., for plaintiff.

Paul Gary Sterling, Atty., Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for defendant.

## MEMORANDUM DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCHNACKE, District Judge.

In March of 1972, Carter C. Turner (Turner), a seaman aboard the SS Overseas Ulla, fell ill. The vessel, owned and operated by Maritime Overseas Corporation (Maritime) under a time charter to the United States, was in port at Sasebo, Japan. The Master of the vessel telephoned to the United States Naval Dispensary at Sasebo, and arranged for Turner to be transported to and treated or examined at, the Dispensary.

The Dispensary, although not a Naval Hospital, had 40 beds, and ordinarily about seven doctors and six nurses. Its purpose was to treat Navy personnel on a relatively short term basis. Patients requiring care over a period of more than 72 hours were customarily sent on a rather long journey to a Naval Hospital elsewhere. Unlike Public Health Service Hospitals located in the United States whose services are required to be provided to American seamen without charge (42 U.S.C. § 249), Navy facilities may, but need not, provide services to certain non-Navy patients, and, if provided, a charge is required to be made (24 U.S.C. § 34).

The Master had a choice among several Japanese hospitals and the Naval Dispensary. He selected the Dispensary. A charge for the services was made and paid.

At the Dispensary, Turner was first examined by a gynecologist who had the emergency duty. He found that Turner needed further evaluation by an internist who made a more complete examination. Turner's history disclosed that he was 46 years old, was a heavy smoker, had suffered a 50 to 70 pound weight loss within recent months, had had, on the ship, an attack of lower abdominal pain and numbness of one leg, but, when observed, was without symptoms and was able to walk. He was observed to be tall and emaciated, and to have a "pigeon breast" deformity. Chest and abdominal X–Rays were taken. They showed a spinal curvature, confirmed pigeon breast deformity, and suggested an aneurysmal dilatation. No sign of acute lung disease was shown by the X–Rays, which were not too clear, and it was concluded that Turner was not suffering from cancer of the lung or acute heart failure, or any acute condition requiring immediate treatment. The doctor did, however, conclude that Turner was suffering from a chronic condition, possibly cancer, which required further diagnosis and study.

The doctor told Turner that more X–Rays were needed, that Turner should stay at the Dispensary for further tests, that, if necessary, he could be transported to the United States under a medical evacuation program, and that he should have attention and should not return to the ship.

Turner refused X–Rays, refused further examination and refused to be admitted to the Dispensary. He said he now felt fine and insisted upon being allowed to return to the vessel. Twice in the midst of examination, Turner left the Dispensary and had to be brought back for further discussion. He was adamant; he insisted that he was going home on the vessel.

A form (DD–689) is customarily prepared by the examining doctor and given to the seaman for delivery to the Master of the vessel. It shows medical information and fitness for duty. Turner told the doctor that if the form showed "unfit for duty" he would not give it to the Master, because if he did, he would not be allowed to sail with the vessel. He importuned the doctor to show him "fit for light duty only" and told him that this would permit him to sail, but

would relieve him of any duties. He promised that on return to the United States he would immediately seek medical care.

The doctor complied. Turner returned to the ship, was relieved of all duty, and the ship sailed the next day. Turner took his meals in the mess hall, but otherwise stayed in his bunk. He was regularly examined by the mate and no unusual symptoms were noted. It was never thought necessary to confine him to the four-bed hospital ward available on the ship.

Ten days out, Turner collapsed and died while getting a drink at a water fountain. The autopsy in Portland, Oregon showed the cause of death as pulmonary emphysema with cor pulmonale, indicating that Turner suffered from a severe chronic lung disease which affected his heart, resulting in heart failure.

An action was brought in the Superior Court for the State of California in San Francisco by Turner's wife and administratrix against Maritime for damages resulting from Turner's death. Maritime tendered defense of the action to the United States. The tender was refused. Maritime settled the state court action for $85,000; it now seeks to recover that amount from the United States, plus legal fees and expenses.

Plaintiff in the state court action had (and plaintiff here presented) medical testimony to indicate that the examination at the Dispensary was insufficient even within the limited time available, that a minimally adequate examination would have disclosed a right sided heart failure, that hospitalization was essential, and that reasonable medical care required that the Master of the vessel be advised of Turner's true condition so that immediate hospitalization could have been ordered.

Even though it might appear to this Court that Turner's informed refusal to follow the doctor's urgent advice was the sole cause of his death, it must be conceded that the medical evidence available to the plaintiff could have convinced a state court jury that Turner's death was caused by negligent examination at Sasebo and by the failure to accurately report Turner's condition of fitness to the Master. The United States does not dispute the reasonableness of the amount of the $85,000 settlement.

The legal basis of this action for indemnification against the United States derives from the principles enunciated in *Hopson v. Texaco, Inc.*, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966). There a cab driver, engaged by the shipowner to transport seamen, was found to be the agent of the shipowner, and the shipowner was held liable for his negligence. Doctors who are hired by the shipowner to provide care for seamen are, by the same rationale, agents of the shipowner, and the shipowner is liable for the malpractice of the doctor. *Central Gulf v. Sambula*, 405 F.2d 291 (5th Cir. 1968); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670 (2nd Cir. 1971).[1]

■ It was implicit in the contract between Maritime and the United States that the examining doctors would exercise reasonable medical care in examining and treating seaman Turner.

■ The agreement between Maritime and the United States regarding Turner's medical care was a maritime contract, and a claim for breach of the implied warranty of workmanlike performance is cognizable in admiralty. *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ In actions where, if a private person were involved, a proceeding in admiralty could be maintained, any appropriate proceeding may be brought against the United States. 46 U.S.C. § 742. This Court has jurisdiction of Maritime's claim for breach of implied warranty.

---

1. There is a certain logical appeal to the concept that the shipowner should be liable only if it had reason to doubt the competency of the doctor and early cases so held. *The C. S. Holmes*, 209 F. 970 (D.Wash.1913), aff'd in part and reversed in part, 220 F. 273 (9th Cir. 1915); *Socony-Vacuum Oil Co. v. Premeaux*, 187 S.W.2d 690 (Tex.Civ.App.1945). But this view cannot survive *Hopson, Central Gulf* and *Fitzgerald.*

Defendant argues that jurisdiction is foreclosed by the holding of *Penn Tanker Co. v. United States*, 409 F.2d 514 (5th Cir. 1969). There the shipping company sought indemnity from the United States based upon negligent treatment of a seaman at a Public Health Service Hospital. Such treatment, of course, is not based upon any agreement between the hospital and the shipping company, but upon the statutory obligation of the Public Health Service to provide such care for American seamen without charge. 42 U.S.C. § 249. The court rejected indemnification, saying

> "The right to indemnification in the *Ryan* type of cases is based upon a breach of a contractual obligation . . . . Here there was no express or implied contractual relationship between the parties."

The contrary is the case here. Maritime had a choice of medical facilities. It chose the Naval Dispensary, requested care there, and became obligated to pay for it. The Dispensary could have accepted or rejected the patient. They were authorized, but not required, to provide medical services for non-Naval Personnel. 24 U.S.C. § 34. If they extended services, they were required to charge for them. If the shipping company entered into like arrangements for care with any other entity, it would be called a contract; no rational basis has been suggested to call it anything else merely because the Government is involved.

■ To recover here, Maritime must prove that a contract existed between Maritime and the United States; that the United States expressly or impliedly warranted workmanlike or non-negligent performance of the contract; that a colorable claim was made by a third party (Turner) that Maritime was liable to the third party by reason of unworkmanlike or negligent conduct by the United States which contributed to the third party's injury; that Maritime was potentially liable on such claim; that defense of the claim was tendered to the United

States and was rejected;[2] and that Maritime reasonably settled the claim. *California Stevedore & Ballast Co. v. Pan-Atlantic Steamship Corp.*, 291 F.2d 252 (9th Cir. 1961); *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir. 1973).

■ Each element has been proven. Maritime, pursuant to its duty to provide medical care for its seamen, contracted with the United States for the provision of such care. The United States and its agent doctors had the duty to perform the agreed services in a workmanlike and non-negligent manner, and to advise Maritime accurately about the condition and duty status of seaman Turner.

Any negligent failure by the United States to provide medical care imposed liability on Maritime to Turner or his survivors for any resulting damage; it was an implied provision of the agreement between Maritime and the United States that Maritime would be indemnified against loss resulting from any negligence or breach of duty by the United States.

There was evidence available to support a finding, in the state court action, that Maritime was liable to Turner's administratrix by reason of negligence and breach of duty on the part of agents of the United States. Maritime properly tendered the defense of this action to the United States. The United States refused to defend.

The contract to provide medical care to seaman Turner was a maritime contract. This Court has jurisdiction of this action.

The settlement entered into by Maritime was reasonable, considering all of the circumstances. The United States is obligated to reimburse Maritime for the amount of the settlement, plus reasonable attorneys' fees and expenses.

The foregoing shall constitute findings of fact and conclusions of law. The parties shall, if possible, agree on a form of judgment. If no such agreement is reached within thirty days from the date hereof, a

---

**2.** If the indemnitor is not given the opportunity to approve the settlement or conduct the defense, the indemnitee must otherwise show that the settlement has not contravened equitable indemnity principles. *Parfait v. Jahncke Service, Inc., supra.*

hearing will be held on Friday, March 18, 1977, at 11:00 a. m., to determine the amount of attorneys' fees and expenses to which plaintiff is entitled. Evidence shall be taken at such hearing by affidavit only, unless the Court, for cause shown, shall otherwise order. Affidavits and memoranda shall be filed by plaintiff fifteen days, and by defendant seven days, before the hearing.