Charles W. ROLLIN, Plaintiff,

v.

KIMBERLY CLARK TISSUE CO., Defendant and Third–Party, Plaintiff.

v.

Troy H. Middleton, III, M.D.; Neurosurgery, P.A., an Alabama Professional Entity; and Coastal Neurological Institute, P.A., an Alabama Professional Entity, Third–Party Defendants.

No. 01–0122–CB–L.

United States District Court, S.D. Alabama, Southern Division.

Dec. 13, 2001.

Neil A. Davis, Dennis Michael O'Bryan, Kirk E. Karamanian, O'Bryan Baun Cohen & Kuebler, Birmingham, MI, for petitioner.

Thomas S. Rue, Johnstone, Adams, Bailey, Gordon & Harris, William E. Pipkin, Jr., Sirote & Permutt, P.C., Mobile, AL, for defendants.

### ORDER

BUTLER, Chief Judge.

This matter comes before the Court on the Motion to Dismiss (Docs. 53 & 54), filed by Troy H. Middleton, III, M.D., Neurosurgery, P.A., and Coastal Neurological Institute, P.A. (collectively, "Dr.Middleton"), the response thereto (Docs. 57 & 58), filed by Kimberly Clark Tissue Co. ("Kimberly Clark"), Dr. Middleton's subsequent reply (Doc. 60), and Kimberly Clark's sur-reply (Doc. 62). After careful review of the pleadings, the argu-

ments of the parties, and relevant case law, the Court finds that Dr. Middleton's motion is due to be **GRANTED**.

## I. Background

This case arises from an accident aboard the ship Fast Eddie, and subsequent medical treatment provided by Dr. Middleton, that allegedly caused Plaintiff to suffer spinal injuries and undergo further surgery. On July 31, 2000, Plaintiff filed suit in the United States District Court for the Eastern District of Louisiana, bringing claims under the Jones Act for negligence and under general principles of admiralty and maritime law for unseaworthiness and failure to provide maintenance and cure. (Doc. 1). To determine the potential liability of Kimberly Clark on these facts, Plaintiff demanded a jury trial. *Id.*

On January 25, 2001, Kimberly Clark answered Plaintiff's complaint and moved to transfer venue to this Court, (Doc. 12). Such motion was granted on February 12, 2001, (Doc. 14), and Plaintiff then moved to consolidate this claim with another action pending before the Court.[1] (Doc. 29). With Kimberly Clark voicing no objection save that such consolidation should not prejudice its right to file a third-party complaint pursuant to Rule 14 of the Federal Rules of Civil Procedure within ten days of its answer to Plaintiff's complaint in the second action, (Doc. 33), the Court consolidated the two actions, with leave for Kimberly Clark to file a third-party complaint. (Doc. 38). Kimberly Clark sub-

sequently filed its Third–Party Complaint, seeking indemnification or contribution from Dr. Middleton.

## II. Conclusions of Law

### A. Joinder

#### 1. Rule 14(c)

Kimberly Clark claims that it properly joined Dr. Middleton under Rule 14(c) of the Federal Rules of Civil Procedure.[2] Where a plaintiff's claims have multiple bases for jurisdiction, as here, the availability of Rule 14(c) joinder turns on the language contained in the original plaintiff's complaint. If the plaintiff explicitly identifies his or her claim as an admiralty or maritime claim within the meaning of Rule 9(h), the defendant may utilize Rule 14(c). The failure of a plaintiff to include such an explicit identifying statement, though, has been held to foreclose Rule 14(c) practice. *See Smith v. Pinell,* 597 F.2d 994 996–97, n. 2 (5th Cir.1979) (finding a mere statement that "[t]his is a case of Admiralty and Maritime Jurisdiction" insufficient to invoke Rule 9(h) in a complaint alleging Jones Act negligence and general maritime law unseaworthiness); *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413, 1418 (E.D.La.1988) (requiring an explicit reference to Rule 9(h) in complaint presenting multiple bases of jurisdiction for defendant to utilize Rule 14(c)). In addition, Official Forms 2 and 15 of the Federal Rules of Civil Procedure suggest that a plaintiff seeking to

---

1. On June 14, 2001, Plaintiff filed a complaint against Kimberly Clark in the Southern District of Alabama (Doc. 39). The complaint was in most respects identical to the earlier complaint filed in the Eastern District of Louisiana. Particularly relevant to the instant motion, however, Plaintiff further claimed that Kimberly Clark selected Dr. Troy Middleton to treat Plaintiff, and that Dr. Middleton failed to provide the requisite level of care during a surgical procedure on Plaintiff's spine. Such failure, Plaintiff claimed, resulted in severe injury, subsequent surgery and disability. *Id.* Again, Plaintiff demanded a jury trial. *Id.* Kimberly Clark answered Plaintiff's complaint on August 2, 2001, (Doc. 47), and filed the instant Third–Party Complaint on August 16, 2001. (Doc. 48).

2. According to Rule 14(c): "When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the

defendant... may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff." *Id.*

Meanwhile, Rule 9(h) of the Federal Rules of Civil Procedure provides that: "A pleading or count setting forth a claim for relief within the admiralty or maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rule[ ] 14(c).... If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not." *Id.*

bring his or her complaint within the purview of Rule 9(h) include a statement to the effect of "[t]his is an admiralty or maritime claim within the meaning of Rule 9(h)." Because Plaintiff's Complaint raises additional bases of jurisdiction beyond admiralty but makes no reference at all to Rule 9(h), the Court finds that Plaintiff's complaint is not "within the meaning of Rule 9(h)," as required by Rule 14(c).

Even without requiring an explicit identifying statement, the Court would find Plaintiff's complaint outside the boundaries of Rule 9(h) because of Plaintiff's plain and repeated demands for a jury. No right to a jury trial exists in admiralty cases. *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir.1996) (citing *Waring v. Clarke*, 46 U.S. (5 How.) 441, 459, 12 L.Ed. 226 (1847)). Moreover, "[i]t is no part of the purpose of unification [of maritime and civil procedure] to inject a right to jury trial into those admiralty cases in which that right is not provided by statute." FED. R. CIV. P. 9, Advisory Committee Notes, 1966 Amendment. Plaintiff's demands for a jury trial thus conclusively demonstrate that he does not seek the special procedures protect by Rule 9(h), which renders Rule 14(c) unavailable to Kimberly Clark.

### 2. Rule 14(a)

Even if it failed to properly join Dr. Middleton under Rule 14(c), Kimberly Clark submits that it met the requirements of Rule 14(a) of the Federal Rules of Civil Procedure. Dr. Middleton argues that Kimberly Clark failed to file its Third–Party Complaint under Rule 14(a) within the time frame for doing so without leave of court. Notably, a "third-party plaintiff need not obtain leave [to file a third-party complaint] if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer." FED. R. CIV. P. 14(a). Kimberly Clark never sought leave to file its Third–Party Complaint.

When computing any filing deadline, "the day of the act . . . from which the designated period of time begins to run shall not be included." FED. R. CIV. P. 6(a). Moreover, whenever "the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." *Id.* As Kimberly Clark filed its Answer on August 2, 2001, its time for filing a third-party complaint began to run on August 3, 2001. Excepting weekends, August 16, 2001 represented the last day on which Kimberly Clark could file a third-party complaint. Because Kimberly Clark indeed filed its Third–Party Complaint on August 16, 2001, it did so in a timely manner, and joinder of Dr. Middleton was thus possibly procedurally proper.

## B. Admiralty Jurisdiction

Kimberly Clark posits that the instant claims concern maritime torts, and therefore support admiralty jurisdiction. Even if the Court does not find admiralty jurisdiction over the tort claims, Kimberly Clark seeks leave to amend its complaint to include a claim for breach of warranty under admiralty contract principles. The judicial power of the United States extends to "all Cases of admiralty and maritime Jurisdiction" U.S. CONST. art. III, § 2. District courts, by statute, take original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Because different jurisdictional standards apply to tort and contract actions under admiralty, the Court evaluates each potential jurisdictional basis in turn.

### 1. Admiralty Tort Jurisdiction

 To establish federal admiralty jurisdiction over a tort claim, a party must satisfy each of the twin tests of location and connection. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The location test asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* at 534, 115 S.Ct. 1043. The connection test involves two discrete sub-inquiries: first, whether the "general features of the type of incident involved" raise the specter of "a potentially disruptive impact on maritime commerce"; and second, whether the "general character of the activity giving rise to the incident show[s] a sub-

stantial relationship to traditional maritime activity." *Id.*

### a. The Location Test

■ "Torts fall within maritime jurisdiction only if they occur or have effects on navigable water." *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1278 (11th Cir.1998). The act complained of here—alleged malpractice by Dr. Middleton—undisputedly occurred on land, and Kimberly Clark fails to even discuss how such land-based activity could support this Court's admiralty tort jurisdiction. As the Fifth Circuit noted in a case involving an injured offshore oil rig worker's direct claims against land-based healthcare providers, "[i]f the doctors committed medical malpractice, there is a common-law remedy in state court. We see no reason for expanding admiralty jurisdiction to cases with such scant involvement of maritime locations." *Miller v. Griffin–Alexander Drilling Co.*, 873 F.2d 809, 812 (5th Cir.1989).

Similarly, Kimberly Clark's Third–Party Complaint contains no allegation that Dr. Middleton's actions manifested any effect on navigable water, and its briefs apparently abandon the notion that the effects of such land-based medical treatment could extend to navigable water. Where medical treatment occurs exclusively on land, and the results of that treatment have no effect on navigable water, the location test goes completely unsatisfied.

### b. The Connection Test

■ Even if Kimberly Clark's complaint met the location test, the connection test would still foreclose this Court's jurisdiction. As noted above, Kimberly Clark's third-party claim must allege actions or omissions that could potentially disrupt maritime commerce and bear a substantial relationship to traditional maritime activity. Kimberly Clark fails on both counts.

### i. General Features

In evaluating the potential of the complained-of activity to disrupt maritime commerce, the Court must ask "whether the 'general features' of the incident were 'likely to disrupt commercial activity.'" *Grubart*, 513 U.S. at 538, 115 S.Ct. 1043 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). Put differently, the issue boils down to whether the complaint describes activity that falls "within a class of incidents that pose more than a fanciful risk to commercial shipping." *Id.* at 539, 110 S.Ct. 2972. Medical malpractice, viewed in the aggregate, could well affect a sufficient number of seamen to create a real risk to commercial shipping. So, too, could the service of tainted food by a wharfside pub affect maritime activity. But such everyday risks encountered on land are more adequately addressed by state law and the maritime industry's "regular procedures for replacing absent seamen... designed to insure that an absentee seaman will have no impact on maritime shipping," *Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413, 1420 (W.D.La.1988), than by the extension of federal jurisdiction into a matter of decidedly local concern.

### ii. Substantial Relationship

The second prong of the connection test requires that "a tortfeasor's activity, ... is so closely related to activity traditionally subject to admiralty law that the reasons for applying admiralty rules would apply to the suit at hand," *Grubart*, 513 U.S. at 539–40, 115 S.Ct. 1043. While medical treatment dispensed aboard a ship or on land to a seaman in mid-voyage may bear a sufficiently close relationship to traditional maritime activity, the same cannot be said about the actions of a physician who, on terra firma, treats or operates upon an onshore seaman. *See Miller v. Griffin–Alexander Drilling Co.*, 873 F.2d 809, 813 (5th Cir.1989) (finding that alleged on-shore malpractice intended to treat injury sustained aboard ship "bears no relationship at all to maritime injuries"). The mere occupation of a patient cannot, without more, equate the practice of medicine to piloting an oil tanker for jurisdictional purposes.

### 2. Admiralty Contract Jurisdiction

In its Response, Kimberly Clark claims that its Third–Party Complaint founds juris-

diction upon an implied admiralty contract as well as admiralty tort. In support of this argument, Kimberly Clark candidly admits that it confused the issue when it "used the term 'negligence' to refer to Dr. Middleton's breach of the warranty of workmanlike performance."[3] Response at 1. The Court cannot in good conscience construe Kimberly Clark's references to negligence as allegations sufficient to provide notice of a claim for breach of an implied warranty under and implied contract. Accordingly, the Court entertains Kimberly Clark's request for leave to amend its Third–Party Complaint.

Leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). A court need not grant such leave, however, when the proposed amendment could not survive a motion to dismiss. *See Posner v. Essex Ins. Co., Ltd.* 178 F.3d 1209, 1222 (11th Cir.1999) (finding denial of leave to amend proper where plaintiffs, in opposition to motion to dismiss, failed to set forth additional facts sufficient to confer jurisdiction).[4] Both parties have fully briefed the issue of the Court's jurisdiction over the alleged contract between Kimberly Clark and Dr. Middleton. *See* Reponse at 1–4, Reply at 7–15, Sur–Reply at 1–4. The Court therefore evaluates the request for leave to amend to see whether any set of facts exists under which Kimberly Clark could establish this Court's jurisdiction over a contract entered

into between a ship owner and a land-based physician.[5]

■ The implied warranty of workmanlike performance, recognized in *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*,[6] applies only to contracts cognizable under federal admiralty law. The Eleventh Circuit recognizes "the general rule for admiralty jurisdiction in contract: for jurisdiction to exist the subject contract must be wholly maritime in nature, or any nonmaritime elements must be either insignificant or separable." *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276 (11th Cir.1998) (citation omitted). Put another way, admiralty jurisdiction applies to those contracts whose subject matter is "necessary to the operation, navigation, or management of a ship." *Id.* (citations omitted). Nonetheless, the Eleventh Circuit has yet to address the precise issue of whether a contract entered into by a vessel owner and a healthcare provider can suffice to confer admiralty jurisdiction.

■ Kimberly Clark directs the Court's attention to *SeaRiver Maritime, Inc. v. Industrial Medical Servs., Inc.*, 983 F.Supp. 1287 (N.D.Cal.1997), for the proposition that contracts entered into by vessel owners and shoreside medical providers constitute maritime contracts and carry an implied warranty

---

**3.** In the event that the Third–Party Complaint requires "clarification" regarding the alleged breach of warranty, Kimberly Clark moves for leave to so amend. Response at 1.

**4.** Indeed, the method by which Kimberly Clark seeks leave to amend its complaint fails to satisfy Rule 7(b) of the Federal Rules of Civil Procedure. *See Posner*, 178 F.3d at 1222 (stating that "where a request for leave to amend a complaint simply is embedded within an opposition memorandum, the issue has not been raised properly").

**5.** Dr. Middleton gets it wrong when he asserts that Kimberly Clark must prove the existence of such a contract at this early procedural stage. Reply at 7. In evaluating a motion to dismiss, a court takes the allegations in the complaint at face value, and construes the facts in the light most favorable to the plaintiff. *See Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994). Here, the Court assumes the truth of Kimberly Clark's claim that it entered into an implied contract with Dr. Middleton that contained a

concomitantly implied warranty of workmanlike performance. The Court asks not whether such facts have already been proven, or even whether such facts are likely to be proven, but whether such facts—if proven—would support a finding of jurisdiction.

**6.** 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). For a comprehensive discussion of the tortuous history of the implied warranty of workmanlike performance, see *Smith & Kelly Co. v. S/S Concordia TADJ*, 718 F.2d 1022, 1025–27 (11th Cir.1983). *Ryan Stevedoring* recognized both an implied warranty of workmanlike performance running from stevedore to vessel owner and a duty of the stevedore to indemnify the vessel owner for damages resulting from breach of that warranty, regardless of actual negligence on the part of the stevedore. Congress later abrogated the *Ryan Stevedoring* indemnity principle, *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 262, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), but left untouched the implied warranty of workmanlike performance.

of workmanlike performance. Indeed, *SeaRiver* involved a defendant corporation that specialized in the delivery of medical services for employers, and over eight to ten years regularly took referrals from a vessel owner plaintiff. Such a long-standing relationship, the court held, sufficed to demonstrate "an understanding, based on their relationship and past dealings, that [the vessel owner] would send its injured employees to [the defendant], and that in return, [the defendant] would provide competent medical treatment to those employees." *SeaRiver,* 983 F.Supp. at 1298. Without discussion, the Court held that such "[a]n agreement between a vessel owner and a medical provider is a maritime contract which includes an implied warranty of workmanlike performance" *Id.* (citing *Maritime Overseas Corp. v. United States,* 433 F.Supp. 419, 421 (N.D.Cal.1977)).[7] Thus, while *SeaRiver* may support the unsurprising proposition that a contract may be inferred from a lengthy past course of dealing between a vessel owner and a medical services provider, it contributes little to the Court's evaluation of the propriety of admiralty jurisdiction. The relevant inquiry remains not whether an implied contract might exist, but whether such an implied contract displays a wholly maritime nature, in that it is necessary to operation, navigation or management of a ship. *See Wilkins, supra.*

Alternately, Kimberly Clark directs the Court to *Sementilli v. Trinidad Corp.,* 155 F.3d 1130 (9th Cir.1998), where the Ninth Circuit held that a contract entered into by a vessel owner and a physician for prevoyage examination of a seaman who took ill during the voyage constituted an admiralty contract.[8] In *Sementilli,* the vessel owner contracted with the physician for the specific purpose of certifying seamen as fit for duty prior to embarking on a voyage. The vessel owner, moreover, found his selection of physicians limited by the physician certification process required by the seamen's union and therefore was therefore especially dependant upon the defendant's judgment. The present case, of course, differs markedly from the facts of *Sementilli:* Dr. Middleton's allegedly negligent conduct occurred post-voyage, meaning that his actions or omissions could not affect the well-being of a crew member upon the high seas, and Kimberly Clark's maritime operations did not especially rely on his judgment. The contract alleged here simply could not affect maritime commerce in any real way.

Dr. Middleton, meanwhile, urges the Court to follow *Penn Tanker Co. v. United States,* 409 F.2d 514, (5th Cir.1969), where the former Fifth Circuit held that no express or implied contractual relationship could exist between a vessel owner and the government where the government provided free medical services to a seaman pursuant to statutory obligation.[9] Following this rationale, Dr.

---

7. *Maritime Overseas* provides similarly scant discussion of why a contract to provide medical care for a seaman should qualify as a maritime contract. In *Maritime Overseas,* a seaman who fell ill while his ship was in port at Sasebo, Japan, received treatment at the United States Naval Dispensary in Japan. After receiving clearance as fit for light duty, the seaman returned to his ship and died at sea ten days later. As has been pointed out, *Maritime Overseas* stands only "for the proposition that transactions involving contracts for the medical care of a seaman *entered into while the seaman is in the service of the ship* fall within admiralty jurisdiction." *Masherah v. Dettloff,* 968 F.Supp. 336, 344–45 (E.D.Mich.1997) (emphasis in original). Because the Court deals here with an alleged contract to provide medical services to a seamen who had left the service of his ship, *Maritime Overseas* provides the Court with little direction.

8. As Dr. Middleton notes, *Sementilli* dealt almost exclusively with the applicability *vel non* of *Dau-*

bert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to certain testimony offered at trial. Although the vessel owner in *Sementilli* assuredly sought indemnity under breach of the warranty of workmanlike performance, this factor played no role in the court's decision. Only dicta in Judge Nelson's specially concurring opinion touches upon the goals underlying the warranty of workmanlike performance announced in *Ryan Stevedoring.* Even assuming the relevancy of dicta from a concurring opinion issued by the Ninth Circuit, however, *Sementilli* remains—for reasons set forth below—inapplicable to the present situation.

9. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Middleton argues that the Court cannot find a contractual relationship between the present parties. Kimberly Clark rightly points out, however, that so far as the present situation involves no statutory obligation on the part of Dr. Middleton to provide medical services, *Penn Tanker* must be inapposite to the present case. *See, e.g., Maritime Overseas v. United States,* 433 F.Supp. 419, 422 (N.D.Cal.1977) (finding of statutory duty precluded evaluation of relationship between parties). Unfortunately, Kimberly Clark completely fails to refute the persuasive authority of *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035 (5th Cir.1982), where the Fifth Circuit—relying on *Penn Tanker*—held:

[a] private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract. We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce.

*Joiner,* 677 F.2d at 1038.

The Court finds the reasoning of the Joiner court highly persuasive on its own terms, and in that it follows an earlier decision that constitutes binding authority. A physician who treats off-duty seamen for injuries sustained previously while at sea does nothing different than when he or she treats a mechanic who accidentally crushes a thumb while working with a ball peen hammer. Negligent treatment in either case may prevent the patient from returning to work, and no principled difference can subject the physician to federal jurisdiction over one case but not the other. Because any implied contract between Kimberly Clark and Dr. Middleton to supply medical treatment to seamen could not suffice to invoke federal admiralty jurisdiction, the amendment of Kimberly Clark's complaint to include such allegations would prove futile.

## C. Supplemental Jurisdiction

Even absent independent federal jurisdiction, Kimberly Clark argues that the Court should retain the third-party claims pursuant to its supplemental jurisdiction. Supplemental jurisdiction, with its roots in the common law doctrines of ancillary and pendent jurisdiction, finds its modern statutory expression in 28 U.S.C. § 1367, which provides:

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall involve the joinder or intervention of additional parties.

The requirement that the state claims and federal claims form the same case or controversy is frequently expressed as a "derive from a common nucleus of operative fact." *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 157, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The exercise of supplemental jurisdiction, however, involves a court's discretion, and that discretion should be used narrowly, for supplemental jurisdiction does not license federal courts to transform themselves into courts of general jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (noting, prior to the codification of supplemental jurisdiction, that "the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress"). Although the plain language of 28 U.S.C. § 1367 clearly permits supplemental jurisdiction over third-party claims, the Court finds no reason to take an expansive view of the requirement that supplemental claims be "so related [as to] form the same case or controversy." *Id.*

Dr. Middleton notes that Plaintiff's admiralty claims involve the working conditions on a vessel at sea, while Kimberly Clark's state-law claims involve allegedly negligent performance of a surgical procedure in a hospital. Indeed, the witnesses to such working conditions have nothing in common

with those witnesses who were present during the Plaintiff's operation. Similarly, the witnesses who may comment on the suitability of those working conditions will present evidence wholly unrelated to those who may comment on the standards of care involved in the operation. Dr. Middleton also points to precedent from the Fifth Circuit refusing holding supplemental jurisdiction over state law malpractice claims inappropriate where the original claim sounded in admiralty. *See Miller v. Griffin–Alexander Drilling Co.*, 685 F.Supp. 960, 965–67 (W.D.La.1988), *aff'd* 873 F.2d 809 (5th Cir.1989); *Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413, 1422–24 (W.D.La.1988). As the Fifth Circuit forcefully stated in addressing the possibility of jurisdiction over a medical malpractice claim supplemental to an admiralty action:

> appellants have failed to persuade us that the national interest would be served by applying admiralty jurisdiction to a malpractice claim against land-based doctors who dispensed medical treatment to an onshore [seaman], far removed from the hazards of water-borne navigation. We are in fact convinced that finding admiralty jurisdiction for medical malpractice suits with no more relationship to maritime activities and dangers than is presented here would clearly violate principles of federalism and advance no federal interest.

*Miller*, 873 F.2d at 813. The Court agrees that, as between Plaintiff's Jones Act negligence and unseaworthiness claims and Kimberly Clark's indemnity and contribution claims, no common nucleus of operative facts exists.

■ Of course, *Miller* and *Harrison* did not involve claims for maintenance and cure, but there remains a marked difference between the instant third-party claims and Plaintiff's claims for maintenance and cure. To recover for maintenance and cure, a plaintiff need only prove that: (1) he worked as a seaman; (2) he became ill or injured while in the vessel's service; and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury. *West v. Mid-*

*land Enterprises, Inc.*, 227 F.3d 613, 616 (6th Cir.2000) (citing *Freeman v. Thunder Bay Transp. Co.*, 735 F.Supp. 680, 681 (M.D.La. 1990)).[10] The seaman's illness or injury need not bear any causal relationship to his duties. *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1123 (11th Cir.1995). So long as the seaman's own wilful misconduct played no role in his incapacitation, *id.*, "[a] shipowner must pay maintenance and cure for any illness which occurred, was aggravated, or manifested itself while the seaman was in the ship's service." *Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357–58 (6th Cir.1996). Moreover, the seaman's right to maintenance and cure comes due "without regard to the negligence of the employer[.]" *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979) (citing *Aguilar v. Standard Oil*, 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943)).

■ Plaintiff, then, need only show that his injury occurred at sea and that he incurred medical expenses in cure thereof. Kimberly Clark's liability will rise or fall on evidence wholly unrelated to the quality of care provided by Dr. Middleton. Instead, the instant third-party claims turn on the existence and interpretation of a supposed contractual relationship, the existence *vel non* of malpractice under the Alabama Medical Liability Act, and proof of who caused what extent of Plaintiff's injury. Such evidence goes entirely beyond the scope of Plaintiff's claims, leaving little if any common nucleus of operative facts. Kimberly Clark's third-party claims are not so intimately connected with Plaintiff's claims as to form the same case or controversy, and the Court therefore finds supplemental jurisdiction lacking.

### D. Jones Act Jurisdiction

Kimberly Clark also alleges that the Jones Act, 46 U.S.C. § 688, vests this Court with jurisdiction over the instant claims. Third–Party Complaint, ¶¶ 5–6. True, in claims under the Jones Act, "[j]urisdiction... shall be under the court of the district in which the defendant employer resides or in which

---

10. The *Freeman* court, in turn, relied upon Norris, The Law of Seaman § 26.21, at 53 (4th ed.1985).

his principal office is located." 46 U.S.C. § 688. The Jones Act, however, while providing a remedy to "[a]ny seaman who shall suffer personal injury in the course of his employment," does nothing to create a right of action in vessel owners. *Id.* Accordingly, Kimberly Clark cannot base jurisdiction over its claims on the Jones Act.

### E. Diversity Jurisdiction

Kimberly Clark further alleges, in conclusory terms, diversity of citizenship and an amount in controversy exceeding $75,000 exclusive of interest and costs. Third–Party Complaint, ¶ 7. Closer examination, however, reveals that Kimberly Clark cannot meet the prerequisites of diversity jurisdiction.

Although Dr. Middleton does not contest the existence of diversity jurisdiction, it remains the Court's duty to *sua sponte* investigate each alleged base of jurisdiction. *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir.1999). Kimberly Clark merely avers that it "is, and at all times material hereto has been, a Texas corporation qualified to do business in the State of Alabama." Third–Party Complaint, ¶ 1. On the other side, Third–Party Defendants Middleton, Neurosurgery, and Coastal Neurological Institute are, respectively, "a resident of the State of Alabama... an Alabama professional entity and... an Alabama professional entity." *Id.* at ¶¶ 2–3. For purposes of diversity jurisdiction, "a corporation shall be deemed a citizen of any State by which it has been incorporated and the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Here, Kimberly Clark makes no representation whatsoever as to its primary place of business. Indeed, the oblique statement that it is "qualified to do business in the State of Alabama," leads the Court to wonder whether Kimberly Clark maintains its principal place of business in Alabama. The Court cannot find on the pleadings before it that diversity exists between Kimberly Clark and Dr. Middleton. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994) (agreeing with district court's

conclusion that a complaint failing to set forth a corporate party's principal place of business could not support diversity jurisdiction).

### F. Federal Question Jurisdiction

Finally, Kimberly Clark alleges jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* The existence of federal question jurisdiction turns on the presence or absence of a federal issue on the face of a plaintiff's well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Court cannot discern any claim within the four corners of Kimberly Clark's Third–Party Complaint that presents a federal question. Shorn of the improper reference to the Jones Act, the claims for indemnity and contribution sound in Alabama tort and contract law. The Court can only presume that Kimberly Clark intended to cite to 28 U.S.C. 1333(1), which confers admiralty jurisdiction.

### III. Conclusion

In light of the foregoing, the Court finds that the motion of Dr. Middleton is due to be and hereby is **GRANTED**. Kimberly Clark's third-party claims are hereby **DISMISSED** without prejudice.[11]

---

11. Because the Court finds subject matter jurisdiction lacking, it does not address Dr. Middleton's argument that Kimberly Clark's claims should be dismissed for failure to state a claim.

Nor does the Court express an opinion on the application of Alabama law regarding the relevant statute of limitations or requisite specificity of pleading.